896 So.2d 1151 (2005)
STATE of Louisiana
v.
Tammy L. DONNAUD.
No. 04-KA-624.
Court of Appeal of Louisiana, Fifth Circuit.
February 15, 2005.
*1153 Paul D. Connick, Jr., District Attorney, Twenty-Fourth Judicial District, Parish of Jefferson, Terry M. Boudreaux, Anne Wallis, Chris Cox, Assistant District Attorneys, Gretna, LA, for Plaintiff/Appellee.
Jane L. Beebe, Louisiana Appellate Project, New Orleans, LA, for Defendant/Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., SOL GOTHARD, and JAMES L. CANNELLA.
SOL GOTHARD, Judge.
Defendant, Tammy Donnaud, appeals her conviction and sentence on a charge of unauthorized use of an "access card," in an aggregate amount of more than $2,000.00, a violation of LSA-R.S. 14:67.3. For reasons that follow, we affirm and remand.
Defendant was arraigned on April 23, 2003 and pled not guilty. The State subsequently amended the bill of information, which also included co-defendant William Kerner, IV,[1] to change the alleged time span of the offense. Kerner's attorney made a supplemental motion to quash in open court.[2] Defendant's counsel joined in the motion. The judge heard arguments and denied the motion.
Defendant and Kerner were tried together by a six-member jury, which returned a verdict of guilty as charged as to defendant.[3] Defendant filed a timely Motion for New Trial, which was heard and denied by the trial court.
In due course, the trial court sentenced defendant to three years of imprisonment at hard labor. Defendant filed a Motion to Reconsider Sentence, which was denied. Defendant filed a timely Motion for Appeal, which was granted.

FACTS
Frank Stewart testified that he has been married to Cherie Kerner for eight years, and Ms. Kerner's brother is William Kerner, IV[4]. Defendant, Tammy Donnaud, is William Kerner's former wife.
Stewart testified that he has a credit card issued by First North American Bank. He keeps it as a spare card to use for emergency expenditures. He stores it in the top drawer of the nightstand next to his bed and has not used it since early 2002.
Stewart stated that he and his wife were away from their Metairie home for a family vacation from July 6 through July 25 or 26, 2002. He did not use his credit card between July and September 2002. He, nevertheless, began receiving billing statements from the issuing bank. He threw *1154 away the first one without opening it, assuming it was an advertisement. He received the next statement in October 2002. He opened it to find there was a considerable outstanding balance on his account. None of the merchants on the list of charges were those he commonly patronized.
The credit card statement from First North American Bank, dated July 2002 shows two transactions, dated July 19 and July 20 respectively. The credit card statement for August 2002 shows the opening date for that statement as August 1, and the closing date as August 26. The transactions for that period totaled $3,328.52. The September statement for that card consisted of two pages of charges, starting on August 28 and ending on September 20. The new charges on that statement totaled $3,130.85. The September statement reflected that a payment of $156.00 had been posted to Stewart's account, although he did not make a payment.
Stewart testified that he did not know who had stolen his credit card and that it had not been returned to him. Further, he did not give anyone the authority to use it. When he discovered the card was missing, he contacted the issuing bank to report the theft. The bank did not hold him responsible for the unauthorized charges. Stewart also reported the credit card theft to police. Stewart testified he also discovered that a Chevron credit card, some jewelry, and a laptop computer were missing from his home. He did not report the theft of those items to police, and they were never returned.
Stewart testified that, in June 2002, his wife allowed defendant and her young daughter, Kaitlyn, to stay in their home for the summer. When the family went on vacation, defendant and Kaitlyn remained at the house. Stewart stated that his mail is delivered through a slot in his home's front door, and anyone with access to his house could have taken the missing credit card bill.
Cherie Kerner testified that Tammy Donnaud and nine-year-old Kaitlyn showed up at the Stewart home with their belongings in late May or early June of 2002. Ms. Kerner was not expecting them, as she had not invited them to stay. She, nevertheless, welcomed them into her home. She wanted to help defendant, who had separated from her husband (Ms. Kerner's brother). Ms. Kerner testified her husband was not happy about the arrangement, since the family was about to go out of town. But he grudgingly gave his consent.
Defendant stayed at the family's house continuously between early June and August. Between July 6 and July 25, 2002, defendant, Kaitlyn, and Stewart's parents were the only persons who had access to the family's home. About a week after the family returned from their vacation trip, defendant and her daughter moved out of the house without explanation.
Ms. Kerner testified that the charges on the first credit card statement were made while the family was on vacation. One of the merchants was Langenstein's, a grocery store next to the family's home. Ms. Kerner testified that neither she nor her husband made the purchases billed. She further testified that she did not make a payment on the account in the amount of $156.00.
Ms. Kerner testified that, in October 2002, after the theft of the credit card had been discovered, she went to defendant's apartment accompanied by a Lafourche *1155 Parish deputy and her nephew, William Kerner, V ("Billy"). Billy, defendant's son, was living with Ms. Kerner and Mr. Stewart at that time. When they arrived at defendant's apartment, Billy used his key to gain entrance. He found that defendant was not at home. At that point the deputy left. Ms. Kerner and Billy saw several bags of young children's clothing on the floor in K-Mart shopping bags. Billy commented that it appeared the clothes were intended for his toddler-aged sons, Daniel and Dillan. Ms. Kerner testified that she also saw the laptop computer that had been stolen from her house. Ms. Kerner called the deputy to ask whether she and Billy had the authority to take the bags. She testified that the deputy told her she and Billy could take the bags, since Billy had a key to the residence and the authority to be there. Ms. Kerner said she did not take the computer out of defendant's residence, as it was old and had little value.
Billy carried the bags of merchandise out of the apartment. Ms. Kerner testified that she took the bags and kept them at her house. She testified that she knew from her husband's credit card statements that some of the unauthorized charges had been made at K-Mart. The merchandise still had its original sales tags. She testified that she brought the clothing to court with her. She contacted the two K-Mart stores listed on the statements, and asked that they fax to her the receipts that corresponded with the purchases listed on the statements. Ms. Kerner testified that when she received faxed copies of the K-Mart receipts, she was able to match the items on them to the items found in defendant's apartment.
Billy testified that defendant is his mother and co-defendant, William Kerner, IV, is his father. He began living with Cherie Kerner and Frank Stewart in August 2002, after his mother had left the couple's house. He testified that he visited defendant at the Metairie house in July 2002, but that he did not remove any property from the house.
After Mr. Stewart and Ms. Kerner discovered the credit card was missing, Billy asked defendant whether she had taken it. She told him she had not. Billy testified that he knew Ms. Kerner intended to have defendant arrested. He agreed to accompany Ms. Kerner to defendant's Cutoff apartment only for Kaitlyn's sake. He wanted to be there to comfort his sister when their mother was placed under arrest.
When they arrived at the apartment, Billy used his key to enter. He saw the bags of K-Mart clothing and assumed it was intended for his sons (defendant's grandchildren), who were living with their mother in Jefferson Parish. At first he did not allow Ms. Kerner to see the clothing. He hid it in a bag, because he knew that if Ms. Kerner saw the merchandise was from K-Mart, she would inspect it to determine whether it matched the purchases made on Stewart's credit card. He told Ms. Kerner the bag contained his possessions. Billy testified that when the two stopped to eat at a restaurant on their way back to Metairie, Ms. Kerner went to the car and looked into his bag. She found the clothing and took possession of it.
Linda Henderson testified that she is employed by K-Mart and that her duties include balancing daily receipts, making bank deposits, and paying all bills for store number 4810 in Metairie. Henderson identified various copies of K-Mart sales receipts introduced into evidence by the State. Henderson testified that each receipt *1156 was itemized; the receipts listed each item of merchandise purchased as part of the transaction. She further testified that clothing introduced by the State had tags with bar codes from store number 4810. The receipt for September 8 listed all the items found in the bag at defendant's apartment.
Shelly Ditta Doucet testified that she is a friend and neighbor of Frank Edwards and Cherie Kerner. She knows defendant, and spoke to her during her stay at her friends' home. Doucet testified that the last time she saw defendant was prior to Labor Day of 2002. By that time defendant was no longer staying with Ms. Kerner and Edwards. On a subsequent occasion, Doucet encountered defendant, who was accompanied by co-defendant and their daughter at Foodies Kitchens on Veterans Highway in Metairie. Doucet had never met co-defendant Kerner, but she recognized him from family photographs in Ms. Kerner's home. Doucet testified that defendant behaved oddly, barely talking to her, and failing to introduce her to Kerner.

LAW
In brief to this Court, defendant assigns two errors for our review. In her first assignment of error, defendant argues the trial court erred in denying the motion for mistrial or failing to grant the motion for new trial when the State failed to inform the defense of tangible objects it intended to introduce at trial. Defendant complains that the State violated discovery rules by failing to inform her prior to trial of its intention to introduce K-Mart merchandise found in her apartment. She argues she was prejudiced by the State's omission, and that the court erred in failing to grant a mistrial or a new trial based on the State's discovery violation.
Louisiana's criminal discovery rules are intended to eliminate unwarranted prejudice arising from surprise testimony and evidence, to permit the defense to respond to the State's case, and to allow a proper assessment of the strength of the State's case. La.C.Cr.P. arts. 716-729; State v. Brazley, 97-2987 (La.9/25/98), 721 So.2d 841, 842 (per curiam); State v. Williams, 03-942 (La.App. 5 Cir. 1/27/04), 866 So.2d 1003, 1010, writ denied, 04-0450 (La.6/25/04), 876 So.2d 832. When a defendant is lulled into a misapprehension of the strength of the State's case through the State's failure to fully disclose, basic unfairness may result. State v. Brazley, supra.
La.C.Cr.P. art. 718 provides for discovery, on motion of the defendant, of documents and tangible evidence which are within the possession, custody, or control of the State when the items sought are (1) favorable to the defendant and material and relevant to guilt or punishment, (2) are intended for use by the State as evidence at trial, or (3) were obtained from or belong to the defendant. Id. Discovery is not limited to what is contained in the district attorney's file. Id.; State v. Lee, 531 So.2d 254 (La.1988) (per curiam).
The State's duty to disclose is a continuing one, and if the State discovers additional evidence that is or may be subject to discovery, or decides to use a particular item as evidence, it must notify the defendant of the existence of the additional evidence or its intended use at trial. La.C.Cr.P. art. 729.3; State v. Ray, 423 So.2d 1116, 1118 (La.1982).
On March 1, 2003, defendant filed a Motion for Discovery. In paragraph 2 of the document, defendant moved the court:
To permit the defendant to inspect, copy, examine, test scientifically and/or photograph books, photographs, tangible *1157 objects, buildings, places or copies or portions thereof, which are within the possession, custody or control of the State, which are intended for use by the State as evidence at trial or are favorable to the defendant, relevant, material to guilt/punishment or were obtained from or belong to the defendant. La.C.Cr.Pro. Art. 718[.]
(underlining in original)
During the trial testimony of State's witness Cherie Kerner, it became apparent to the defense that the prosecutor intended to introduce the K-Mart merchandise. Out of the jury's hearing, William Kerner's counsel alleged a discovery violation, arguing he was not notified prior to trial that the State would produce any physical evidence aside from documents. William Kerner's counsel moved for a mistrial, and defendant's attorney joined in the motion. The trial judge denied the motion, and allowed the State to introduce the evidence. The prosecutor produced State's Exhibits 4 through 26, which Ms. Kerner identified as items of children's clothing and toys from K-Mart that were recovered from defendant's apartment by defendant's son, Billy. The court later allowed the exhibits admitted in evidence, over defense objections. William Kerner's counsel then moved the court to strike the disputed evidence, and the court denied the motion.
Ms. Kerner testified that she and Billy went to defendant's apartment in Cutoff, accompanied by a Lafourche Parish deputy. The deputy was there to arrest defendant on an outstanding warrant. Ms. Kerner testified that she and Billy went there because Billy was concerned about his mother. Ms. Kerner was also concerned for her niece, Kaitlyn.
Ms. Kerner said the deputy allowed Billy to use his key to gain entrance to the apartment. Billy went inside first, while Ms. Kerner and the deputy waited outside the door. Upon finding defendant was not at home, the deputy left. Ms. Kerner testified that there were ten K-Mart bags containing store merchandise in plain view in the apartment. The bags were located no more than five feet from the doorway. Ms. Kerner testified that when she saw the merchandise she suspected it had been purchased with the stolen credit card. Billy picked up the bags and carried them out of the apartment. Ms. Kerner telephoned the deputy to ask whether it was alright for them to take the merchandise. The deputy replied that they could take the items, since they had a key to the apartment.
Ms. Kerner testified at trial that she stored the bags of merchandise in a closet in her home, and that she had brought them to court with her. She testified that she informed the prosecutor about the K-Mart items prior to trial.
The K-Mart merchandise produced by the State was clearly not evidence that was favorable to defendant under Article 718(1). Nor does defendant claim she was entitled to inspect the evidence under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The merchandise was alleged to have been taken from defendant (Article 718(3)), although it was not recovered through State action. Additionally, the merchandise was intended for use by the State as evidence at trial under Article 718(2). As such, defendant was entitled to inspect the evidence prior to trial, assuming it was within the State's control.
In a discussion during trial, out of the jury's presence, the following exchange occurred:
THE COURT:

*1158 When was the first time you saw these kid's clothes?
MR. COX [prosecutor]:
Today.
THE COURT:
When's the first time you found out she was bringing them?
MR. COX:
I knew she had them.
THE COURT:
Why didn't you notify them of that?
MR. COX:
I assure you, Your Honor, it wasn't through bad faith.
THE COURT:
I know that. There's no doubt in my mind, Chris, because I know you're totally impeccably honest and ethical. I'm just trying to find out when you knew it, when you had them.
MR. COX:
I don't recall exactly. Probably before the last trial setting. Because I knew she had  she told me she had recovered the merchandise from Tammy's apartment in Cutoff. And that was probably  when was the last trial set, a month ago?
THE COURT:
Can you tell me when the last trial was set?
MR. COX:
I think it was about a month ago. And, Your Honor, probably I was more concerned about attempting to obtain the receipts that Mr. Tobias was looking for than talking about that.
The prosecutor clearly had knowledge of and access to the K-Mart merchandise for some time prior to trial. It was, therefore, under the State's control within the meaning of the code article. Accordingly, the State failed to properly comply with defendant's discovery request.
La.C.Cr.P art. 729.5 provides for sanctions where a party has failed to comply with discovery requirements:
A. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this Chapter or with an order issued pursuant to this Chapter, the court may order such party to permit the discovery or inspection, grant a continuance, order a mistrial on motion of the defendant, prohibit the party from introducing into evidence the subject matter not disclosed, or enter such other order, other than dismissal, as may be appropriate.
The State's failure to comply with discovery procedures does not automatically require reversal. The appellate court must examine the circumstances of the case to determine whether the defendant was prejudiced, and whether any prejudice resulting from the State's non-compliance with discovery procedure caused the trier-of-fact to reach the wrong conclusion. State v. Sweeney, 443 So.2d 522, 527 (La.1983).
An examination of the record shows that proof that the clothing was found in defendant's apartment was central to the State's case. It was needed to show a link between defendant and the stolen credit card. If defendant did not know about the existence of the evidence prior to trial, she would almost certainly be under a misapprehension as to the strength of the State's case. However, considering that the evidence was found in plain view in *1159 defendant's own residence, and was taken before her arrest, it is unlikely that defendant was ignorant of its existence, and the likelihood that it was now in the hands of either her son or Ms. Kerner. In any case, the State was free to elicit testimony about the K-Mart evidence from Ms. Kerner and Billy. Even if the judge had excluded the merchandise, the jury would have learned about it through testimony.
Defendant moved the trial court for a mistrial, a drastic remedy. A more reasonable alternative for the defense would have been to move for a recess or a continuance to allow counsel to inspect the evidence. But defendant did not make such a request. In any case, counsel for both defendants thoroughly cross-examined Ms. Kerner and Billy regarding the K-Mart items. Given these circumstances, we do not find that defendant was prejudiced by the State's failure to produce the evidence prior to trial. Any error the trial court made in denying defendant's mistrial motion was harmless.
Defendant argued in her Motion for New Trial that "the ends of justice would be served" by the trial court's granting a new trial, based on the State's failure to comply with discovery. La.C.Cr.P. art. 851(5). Considering that any error in the admission of the disputed evidence was harmless, defendant is not entitled to a new trial.
In the second assignment of error, defendant argues that her sentence of three years at hard labor is constitutionally excessive and that the trial court erred in failing to consider mitigating factors under La.C.Cr.P. art. 894.1. Defendant filed a Motion to Reconsider Sentence on September 24, 2003, moving the trial judge "to reconsider his sentence ... as being excessive in view of all reasons provided by defendant's counsel in oral argument at sentencing,[5] which are adopted herein, as well as all records and reports prepared and used at trial and motions proceedings before the Court." When the motion came on for hearing that day, defense counsel's entire argument consisted only of a request that the court "reconsider the harshness of the three years."
The failure to file a motion to reconsider sentence, or to state the specific grounds upon which the motion is based, limits a defendant to a review of the sentence only for constitutional excessiveness. State v. Dupre, 03-256 (La.App. 5 Cir. 5/28/03), 848 So.2d 149, 153, writ denied, 03-1978 (La.5/14/04), 872 So.2d 509. The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is constitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, is nothing more than the purposeless imposition of pain and suffering, and is grossly out of proportion to the severity of the crime. State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672, 677 (citing State v. Dorthey, 623 So.2d 1276 (La.1993)). A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Lobato, 603 So.2d 739, 751 (La.1992).
Three factors to be considered in reviewing a sentence for excessiveness are: (1) the nature of the crime; (2) the nature and background of the offender; and (3) the sentences imposed for similar *1160 crimes by the same court and other courts. State v. Tracy, 02-0227 (La.App. 5 Cir. 10/29/02), 831 So.2d 503, 516, writ denied, 02-2900 (La.4/4/03), 840 So.2d 1213. The trial judge has wide discretion in imposing sentences within the statutory limits, and a sentence will not be set aside if it is supported by the record. State v. Taylor, 02-1063 (La.App. 5 Cir. 2/25/03), 841 So.2d 894, 900, writ denied, 03-0949 (La.11/7/03), 857 So.2d 516.
Defendant was charged under La. R.S. 14:67.3. Paragraph B of that statute required that she be sentenced according to the provisions of the general theft statute, La. R.S. 14:67. Since defendant was convicted of illegally obtaining credit in an amount greater than $2,000.00, her sentencing exposure was zero to ten years, with or without hard labor. La. R.S. 14:67(B).
Prior to sentencing, the court allowed Cherie Kerner to give a victim impact statement. She said, in part:
Judge, the circumstances of Billy and Tammy's life is [sic] just another iteration of the typical circumstances they continually create for themselves and for other people. As a family member, I'm really tired of it. On top of stealing from me, it did not surprise [me] to see them non-repentent [sic] nor continue to lie and create the fantastic stories to attack my character and my husband's character in order to wiggle out of the situation that they brought upon themselves.
In sentencing defendant, the trial judge commented:
I am familiar with the case, and I recall the trial in quite a bit of detail. Ms. Donnaud, in my opinion, was systematic in her thefts. She seems to be, although she didn't take the stand and did not testify, I see no reason to believe she is remorseful in any way. I thought it was despicable....
The court refrained from imposing a fine or requiring defendant to pay restitution, as authorized by the statute. In imposing sentence, the court apparently considered defendant's lack of remorse, the extensive amount of time during which defendant continued to use the stolen credit card, and the impact the offense had on the victims.
The court's sentence is not out of line with sentences imposed by other courts for this offense. See, State v. Woodman, 28,004 (La.App. 2 Cir. 1/24/96), 666 So.2d 1255, writ denied, 96-0489 (La.5/3/96), 672 So.2d 696, in which the Second Circuit approved a sentence of five years at hard labor for unauthorized use of a credit card to charge over $2,000.00. The Woodman court found the sentence was supported by factual matters contained in the pre-sentence investigation report. The court also noted that the trial court had shown leniency in declining to impose a fine or order restitution. Based on the foregoing, we do not find the trial court abused its broad discretion in imposing a three-year sentence.
We have reviewed the record for errors patent in accordance with La.C.Cr.P. art. 920 and State v. Oliveaux, 312 So.2d 337 (La.1975). That review reveals that the commitment is inconsistent with the trial transcript. While the transcript reflects that defendant was convicted of unauthorized use of an access card in an amount greater than $2,000.00, the commitment shows defendant was convicted of unauthorized use in an amount greater than $100.00, a lesser degree of the offense. Where the transcript and the minute *1161 entry conflict, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983); State v. Behre, 03-896 (La.App. 5 Cir. 12/9/03), 864 So.2d 668, 672. The matter is remanded with an order to the trial court to amend the commitment to conform to the transcript. See, State v. Mitchell, 04-136 (La.App. 5 Cir. 6/29/04), 877 So.2d 1151, 1156.
AFFIRMED AND REMANDED WITH ORDER.
NOTES
[1] This appeal applies only to Tammy Donnaud.
[2] The record does not contain any written motion to quash.
[3] The jury found Kerner guilty of a lesser degree of the offense.
[4] Co-defendant on the charge.
[5] Defense counsel did not offer any oral argument prior to sentencing.