948 So.2d 236 (2006)
STATE of Louisiana
v.
Ruben SOSA.
No. 04-KA-507.
Court of Appeal of Louisiana, Fifth Circuit.
December 12, 2006.
*238 Paul D. Connick, Jr. District Attorney, Parish of Jefferson, Terry M. Boudreaux, Anne Wallis, Martin Bellanger, Assistant District Attorney, Parish of Jefferson, Gretna, Louisiana, for Plaintiff/Appellee.
James D. Maxwell, Attorney at Law, Kenner, Louisiana, for Defendant/Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., CLARENCE E. McMANUS and FREDERICKA HOMBERG WICKER.
FREDERICKA HOMBERG WICKER, Judge.
The matter before this court is on remand from the Louisiana Supreme Court. In our earlier decision, we reversed the defendant's conviction and sentence for arson with intent to defraud based on the defendant's first assigned error. State v. Sosa, 04-507 (La.App. 5 Cir. 12/28/04), 892 So.2d 633. We held that the evidence at trial was insufficient to prove the defendant had the requisite intent to defraud his insurer. We further found that the holding pretermitted consideration of the defendant's three remaining assignments of error.
*239 The Supreme Court granted certiorari and held that the jury could have rationally found that the defendant set fire to his home with the intent to defraud his insurer. State v. Sosa, 05-0213 (La.1/19/06), 921 So.2d 94. Consequently, the Supreme Court reversed our prior decision overturning the defendant's conviction and sentence, and remanded the case for this court to consider his three remaining assignments of error.
A complete recitation of the facts and procedural history can be found in our original decision in this case and will not be repeated herein. We will now consider defendant's remaining assignments of error as instructed by the Supreme Court.
In his second assignment of error, the defendant contends the trial court erred in allowing the prosecutor to use a frying pan for demonstrative purposes during his closing rebuttal argument, since neither that pan nor any others were admitted in evidence at trial, and there was no showing that the pan possessed the same physical characteristics as the pan allegedly involved in the fire. The defendant further maintains that the prosecutor's act of pouring water into the pan as a substitute for an accelerant was prejudicial, because there was no evidence that an accelerant was used in setting the fire.[1]
The State responds that the prosecutor did not attempt to link the pan to the crime; he simply sought to counter the defendant's contention that an amateur arsonist would have spilled the accelerant, and that if an accelerant had been used, investigators should have found evidence of it.
La.C.Cr.P. art. 774 requires that closing arguments at trial be confined "to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case." The article further provides that the prosecutor's rebuttal in closing argument is to be confined to answering the arguments of the defendant. The trial judge has broad discretion in controlling the scope of closing arguments. Even if the prosecutor exceeds those bounds, the reviewing court will not reverse a conviction unless it is thoroughly convinced the remarks influenced the jury or contributed to the verdict. State v. Casey, 99-0023 (La.1/26/00), 775 So.2d 1022, 1036, cert. denied, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000); State v. Lai, 04-1053 (La.App. 5 Cir. 4/26/05), 902 So.2d 550, 559, writ denied, 05-1681 (La.2/3/06), 922 So.2d 1175.
Prior to the State's rebuttal argument, defense counsel learned the prosecutor planned to use a frying pan unrelated to the case as a visual aid, and counsel objected. The prosecutor said he intended to pour water into the pan to demonstrate for the jury that a liquid can be dispensed into such a pan without any spillage. The prosecutor explained the aim of the demonstration was to rebut the defendant's claim that an amateur arsonist would have sloshed accelerant all around the scene.
The defendant countered that the State was prohibited from using the pan to illustrate his argument because it was not admitted in evidence at trial, and the prosecutor offered no proof that it was similar to the pan that was referred to in testimony. The trial judge stated that, although he saw no useful purpose for the proposed *240 demonstration, he did not believe it would prejudice the defendant.
During his rebuttal argument, the prosecutor stated:
[Defense counsel] wants to talk about hand swabs, and taking clothing, taking shoes, taking parts of the counter top, taking parts of the flooring to test for accelerants, gasoline, things like that. Now, this is demonstrative evidence, this isn't the pan that's photographed in this picture, but this is a Teflon pan that I cook eggs in. I could pour an accelerant in that pan and not drop a spec. It's not on my clothes, it's not on the counter top, it's not on the floor.
We do not find that the trial court committed reversible error in allowing the State to use the frying pan for demonstrative purposes during closing rebuttal. First, the prosecutor did not go beyond the permissible scope of article 774. There was testimony at trial regarding a frying pan found on the stove in the defendant's kitchen during the police investigation. That frying pan was pictured in photographs of the scene admitted in evidence at trial. Detective Guidry testified that he believed the fire was started in the area of the range top and was accelerated with an unidentified flammable substance in the frying pan. The prosecutor's demonstration was a response to the defendant's argument in closing that investigators failed to test his hands or clothing for spilled accelerant.
The defendant complains he was prejudiced because the trial court did not admonish the jury regarding the prosecutor's demonstration. We do not find the defendant was prejudiced. The prosecutor explained to the jury that the frying pan he presented during his rebuttal argument was not the one depicted in the photographic evidence. He also stated that the purpose behind his demonstration was to refute the defendant's contention that if he had used an accelerant as alleged evidence of it would have been found on his person. Moreover, the trial court instructed the jury that closing arguments are not evidence.
The facts in the instant case are comparable to those in State v. Duncan, 99-0778 (La.App. 4 Cir. 4/19/00), 761 So.2d 586, writ denied, 00-1623 (La.6/22/01), 794 So.2d 778. In that case the Fourth Circuit found the trial court did not err in allowing the prosecutor to use a baseball bat unrelated to the charged offense of second degree murder as a demonstrative aid during his closing argument.
The court reasoned that the State did not attempt to link the baseball bat to the murder, but simply used it to illustrate the type of weapon that was likely used to strike the victim. The court noted that the forensic pathologist had testified the victim sustained injuries from a heavy blunt object such as a baseball bat. The defendant himself had testified he struck the victim with a baseball bat, and that he left the bat at the scene. The investigating detective testified he did not find a baseball bat at the scene of the murder, but if a wooden bat had been left in the house, it had probably burned in the related fire. The court further noted the State did not suggest that the bat displayed during its closing argument was the one the defendant used to attack the victim. We find, as did the Duncan court, that the prosecution's use of an item not in evidence to simply illustrate a point in closing argument was not cause for prejudice.
In his third assignment, the defendant contends the trial court erred in allowing the State's expert witness, Special Agent John Springer, to testify after the State failed to turn over Springer's written report prior to trial. The defendant maintains *241 this was a discovery violation, and it prevented him and his expert from preparing an adequate cross-examination of Springer at trial.
The State responds that it did not receive Springer's report until the morning of trial, and there was nothing new revealed in the report. The State further argues the defendant was not prejudiced, as he effectively cross-examined Springer.
La.C.Cr.P. art. 718(2) requires the State, on the defendant's motion, to produce documents and tangible objects within its possession, custody or control that are intended for use by the State as evidence at trial. La.C.Cr.P. art. 719 gives the defendant the right, upon motion, to inspect and copy, photograph, or otherwise reproduce the results of scientific tests or experiments made in connection with his case that are within the State's knowledge, possession, custody and control, and are intended for use at trial. The State is under a continuing obligation to promptly disclose additional evidence that may be discovered or that it decides to use as evidence at trial. La.C.Cr.P. art. 729.3.
When a party to a criminal proceeding fails to comply with the provisions of the discovery articles, "the court may order such party to permit the discovery or inspection, grant a continuance, order a mistrial on motion of the defendant, prohibit the party from introducing into evidence the subject matter not disclosed, or enter such other order, other than dismissal, as may be appropriate." La.C.Cr.P. art. 729.5A; State v. Donnaud, 04-624 (La.App. 5 Cir. 2/15/05), 896 So.2d 1151, 1158.
The State's failure to comply with discovery procedures does not automatically require reversal. The appellate court must examine the circumstances of the case to determine whether the defendant was prejudiced by the State's non-compliance, and whether such prejudice caused the trier of fact to reach the wrong conclusion. State v. Sweeney, 443 So.2d 522, 527 (La.1983); State v. Donnaud, supra.
In State v. Smith, 99-1020 (La.App. 5 Cir. 2/29/00), 757 So.2d 74, 77-78, writ denied, 00-1017 (La.3/30/01), 788 So.2d 439, 01-0854 (La.11/21/01), 802 So.2d 631, this court commented:
The discovery articles are intended to eliminate unwarranted prejudice which could arise from surprise testimony and evidence, to permit the defense to answer the State's case, and to allow the defendant to properly assess the strength of the State's evidence in preparing a defense. When the defendant is lulled into a misapprehension of the strength of the State's case through the prosecution's failure to disclose timely or fully, and the defendant suffers prejudice when the undisclosed evidence is used against him, basic unfairness results which constitutes reversible error. However, a conviction will not be reversed on the basis of a discovery violation unless prejudice is shown by the trial court's adverse ruling.
(citations omitted).
In the instant case, the defendant filed a pre-trial motion for discovery seeking, among other things, 1) reports generated by any officer with the Bureau of Alcohol, Tobacco and Firearms (ATF) who arrived at the scene within twenty-four hours after the fire; 2) any report prepared by an expert in fire investigation who the State consulted and who would testify at trial; and 3) copies of any and all reports or notes, handwritten or otherwise, by ATF Special Agent John Springer. The defendant filed a separate motion requesting the reports from any examination of his house or its contents.
*242 On December 5, 2002, defense counsel informed the trial court that the State had provided open file discovery, but that he could not determine from the State's file what, if any, items had been seized from the defendant's house, or whether any scientific tests had been performed on the evidence. The prosecutor noted that some items had been seized from the kitchen, including some pots and possibly a microwave oven. When the trial judge asked whether the State had performed any scientific testing, the prosecutor responded, "We didn't, but I can't speak for the people who were doing this matter civilly, Judge." The judge asked whether the police report showed that any scientific tests were performed. The prosecutor answered, "Not by a fire arson investigator." The judge then told defense counsel, "Well, if you don't get any notice of a scientific test that was done then they can't use it at trial." The trial judge asked defense counsel whether his discovery requests were satisfied, and counsel responded, "Yes, sir."
On October 28, 2003, the first day of trial, the defendant made an oral motion to exclude Special Agent Springer from testifying. The defendant argued the State had just turned over the officer's written report, evidence it should have submitted in response to a discovery request made a year earlier.
The prosecutor responded that he had received the two-page report from Springer the night before, upon meeting with the officer for the first time. He explained that Springer resided in Shreveport. The prosecutor asserted the defendant had known about Springer since the case was instituted, as the agent's name was mentioned throughout a report provided to the defendant in discovery. The State further argued that Springer was at the scene on the day of the incident, and should be allowed to testify regarding his inspection of the house.
The trial judge inspected Springer's report, noted it was not dated, and said he could not tell when it was generated. The judge concluded that the report did not contain anything so unique that it could not have been known by the defense, and he ruled that Springer could testify.
We find no error in the trial court's ruling allowing the State to call Springer as a witness. First, there is no duty on the part of the State to disclose information which it does not possess. Thus, the exclusion of evidence is not an available sanction when the State has promptly informed the defendant of the receipt of additional evidence, even where the new matter is uncovered at an inopportune time for the defense. State v. Williams, 448 So.2d 659, 664 (La.1984).
The defendant was not surprised by the contents of Springer's written report. The trial court noted that the officer's report did not reveal any facts the defendant did not learn from other sources. The report[2] contains Springer's observations about the residence, his determination that there was no electrical cause for the fire, and his conclusion that it was incendiary. Springer's determination as to the cause of the fire was duplicated by Alonzo, the electrical engineer, whose report the defendant timely received.
The defendant also fails to show he was prejudiced by the late disclosure of Springer's written report. The record shows he extensively and effectively cross-examined the officer. In fact, the cross-examination spans sixteen pages in the trial transcript. The defendant challenged Springer's investigation methods, playing *243 up the lack of physical evidence collected and analyzed. He also exposed the fact that Springer did not know how the fire started, and showed that the agent did not find, as did his co-investigator Dennis Guidry, that the fire resulted from an accelerant in the frying pan. The effects of a discovery violation may be remedied by effective cross-examination. State v. McGinnis, 04-1286 (La.App. 5 Cir. 10/6/05), 917 So.2d 471, 485-486, writ denied, 05-2469 (La.4/28/06), 927 So.2d 283.
In his fourth assignment, the defendant argues the trial court erred in excluding a three-minute ATF training videotape he attempted to introduce and present to the jury during the testimony of his expert witness, LaDon Richardson. The defendant asserts the videotape, which explains flashover and post-flashover and the effects of hot gas layers, would have aided jurors in understanding the causes and origins of fires. The State contends the admissibility of the videotape was within the discretion of the trial court. The State maintains the videotape was cumulative of other evidence, and was thus not necessary to the defendant's case.
Prior to LaDon Richardson's testimony, defense counsel requested permission to play the videotape. The State objected, arguing it had not viewed the tape. The trial court initially ruled the defense could play the tape for the jury, and the State would later be allowed to present evidence to rebut it. The State vehemently objected. The trial court then changed its ruling, ordering that the videotape not be played. The court said it would nevertheless allow the defendant's expert to testify about the tape.
After the direct examination of Richardson, and prior to the State's cross-examination of him, the trial court revisited the issue of the tape's admissibility on its own motion. The trial court sent the prosecutors to review the videotape with its experts. Subsequently, the parties re-argued its admissibility. The defendant maintained the tape was a means by which it could educate the jury about flashover and post flashover effects.
The State countered that the tape was irrelevant because all of the experts agreed there was no flashover in the fire at issue. The State further argued the tape was misleading because it demonstrated the progression of an accelerated fire in conditions unlike the fire at the defendant's house.
The trial court again ruled the tape was inadmissible, as it would mislead the jury; but allowed both parties to offer testimony about flashover, describing it in as much detail as they desired. The court further determined that the videotape would be misleading to the jury.
All relevant evidence is admissible, except where limited by law. La. C.E. art. 402. Relevant evidence is that which has a tendency to make the existence of any fact that is of consequence to the determination of the action more probable than without the evidence. La C.E. art. 401. Although relevant, evidence may nonetheless be excluded if the probative value is substantially outweighed by its prejudicial effect. La. C.E. art. 403. A trial judge's determination regarding the relevancy and admissibility of evidence will not be overturned on appeal absent a clear abuse of discretion. State v. Sandoval, 02-230 (La.App. 5 Cir. 2/25/03), 841 So.2d 977, 985, writ denied, 03-0853 (La.10/3/03), 855 So.2d 308.
A photograph or videotape that illustrates any fact, sheds light upon any factor at issue in the case, or reliably represents a person, place or thing depicted is admissible, provided its probative value outweighs any prejudicial effect. State v. Casey, 775 So.2d at 1037. In *244 determining the admissibility of a videotape, the trial court should consider; 1) whether the videotape accurately depicts what it purports to represent, 2) whether it tends to establish a fact of the proponent's case, and 3) whether it will aid the jurors' understanding of the case. The trial court should also consider whether the videotape will cause undue prejudice, mislead the jury, confuse the issues or cause undue delay. State v. Sartain, 98-0378 (La.App. 4 Cir. 12/1/99), 746 So.2d 837, 848, writ denied, 00-0341 (La.9/15/00), 769 So.2d 4.
We find that the trial court did not abuse its discretion. The videotape at issue explained flashover and post flashover. All three experts agreed that the fire in the instant case did not create a flashover. Thus, there was no relevant purpose in instructing the jury on the subject. Additionally, as noted by the trial court, all three experts effectively described the effects of a flashover. Springer, the State's expert, noted the videotape depicted an accelerated fire next to a highly combustible bean bag chair. Springer explained that type of upholstered furniture is rarely found in kitchens, and that the videotape did not simulate a kitchen fire. Springer opined it would simply confuse the jury.
Finally, we have reviewed the record on appeal for errors patent, in accordance with La.C.Cr.P. art. 920. La.C.Cr.P. Art. 879 requires a court to impose a determinate sentence. We note that the exact provisions of defendant's sentence are unclear from the record.
The trial court initially sentenced the defendant to five years at hard labor, the first two of which were to be served on home incarceration. The trial court suspended the last three years of the sentence and placed the defendant on inactive probation. The court also ordered the defendant to provide restitution as determined by the Department of Probation, and gave him five years in which to pay it. The trial court then ordered that the defendant serve active rather than inactive probation.
The prosecution advised the trial court that if the first two years of the defendant's sentence were not probated, the victim would have to wait for two years to see any restitution payments. The trial court again amended the defendant's sentence, stating, "We're going to start probation immediately. Defendant will have five years to pay forto make restitution. The first two years of his sentence is going to be served on home incarceration, the last three years are going to be served on active probation." The trial court specified that the two years of home incarceration were a special condition of the defendant's probation. The trial court was informed that the Department of Probation was not authorized to determine restitution, so the court scheduled a status conference for the purpose of setting the amount of restitution to be paid. The commitment reflects the defendant received a five-year sentence at hard labor and was placed on three years of active probation, the first two years of which would be served on home incarceration as a special condition of probation.
It appears to have been the trial court's intention to suspend the defendant's entire five-year sentence and to place the defendant on active probation for five years, the first two of which would be served in home incarceration. This is not, however, made clear by the record. Furthermore, the record does not show that the trial court imposed special conditions for the home incarceration as required by La.C.Cr.P. art 894.2 C. Additionally, there is no evidence in the record that the trial court ever set the amount the defendant was to pay in restitution. La.C.Cr.P. art 895 A(7) *245 provides that a court can order a defendant to make reasonable restitution "in an amount to be determined by the court." We therefore vacate the defendant's sentence and remand for re-sentencing for a determinate sentence in accordance with the Louisiana Code of Criminal Procedure.
For the reasons assigned herein, we affirm the defendant's conviction, and vacate defendant's sentence. The case is remanded to the trial court for re-sentencing in accordance with this opinion.
CONVICTION AFFIRMED; SENTENCE VACATED; MATTER REMANDED
NOTES
[1] There is no indication in the trial transcript as to what, if any, actions the prosecutor performed. But based on the prosecutor's statements to the trial court following the defendant's objection and the content of his rebuttal argument, it seems likely that he did in fact pour water into the pan as a demonstration.
[2] Springer's report was introduced at trial as State's Exhibit 2, for record purposes only.