FREDERICKA HOMBERG WICKER, Judge.
 

 Ijn this criminal matter, defendant, Deraid Gene Johnson, appeals his two narcotics convictions as well as his multiple offender adjudication and sentence. For the reasons that follow, we affirm defendant’s convictions, vacate his multiple offender adjudication and sentence, and reinstate his original sentences, as amended, and remand this matter to the district court for proceedings consistent with this opinion.
 

 On September 11, 2003, the St. James Parish District Attorney filed a bill of information charging defendant, in count one, with possession with intent to distribute cocaine, LSA-R.S. 40:967 A(l), and in count two, with possession with intent to distribute marijuana, LSA-R.S. 40:966 A(l). At the September 22, 2003 arraignment, defendant pled not guilty. On June 27 and 28, 2006, the case was tried before a twelve-person jury which found defendant guilty as charged on both counts.
 

 On January 23, 2007, the trial judge sentenced defendant to two concurrent twenty-year sentences in the Department of Corrections with the first two years to be served without benefit of parole, probation, or suspension of sentence. The State thereafter filed a multiple offender bill of information alleging defendant to be a second felony offender. On August 28, 2007,
 
 *258
 
 after defendant stipulated to the ^allegations in the multiple bill, the trial judge vacated the previous sentence and resentenced defendant to twenty years in the Department of Corrections with credit for time served. Defendant now appeals.
 
 [1]
 

 FACTS
 

 On July 18, 2003, at approximately 8:30 p.m., a group of police officers from the St. James Parish Sheriffs Office and the Gramercy Police Department went to defendant’s residence at 1591 Tulip Lane in Gramercy, a high crime area, to execute a search warrant. When the signal was given, the officers exited their vehicles, with the plan that some officers were to go to the front of the residence while others proceeded to the back. As the officers approached the front of the house, defendant ran next to the side of the house toward the back, and co-defendant, Courtney Johnson,
 
 [2]
 
 ran inside the house, closing the door behind him.
 

 Officer Alan Berthelot, Detective Julie Zeringue, and Deputy Billy Jordan chased defendant on foot. When they got to an area behind a trailer, Detective Zeringue and Deputy Billy Jordan observed defendant throw something with his left hand. Detective Zeringue followed the direction of the object and noticed that it hit the left back corner of the metal roof of the shed and bounced back, making a “ping” sound as it did so.
 

 At that point, Detective Zeringue focused her attention back on defendant and saw that Officer Berthelot had defendant on the ground. Detective Zeringue then assisted Officer Berthelot in handcuffing defendant. While doing so, she pulled defendant’s left arm from underneath his body and found in his hand a cell phone and some money. After defendant was handcuffed, Detective Zeringue directed Deputy Jordan to the area where the object was tossed. A couple of minutes later, Deputy Jordan found a large rock-like substance in a plastic bag.
 

 14 While defendant was being chased and apprehended, Lieutenant Andrew Duhe went to the house to execute the search warrant. When he arrived, other officers had already secured the residence. Lieutenant Duhe brought a copy of the search warrant to Gwen and Charlotte Johnson, who lived there, and told them that he had a search warrant to search the residence for drugs. He learned from Charlotte Johnson, Courtney’s mother, that defendant and Courtney shared a bedroom in the residence. Afterward, the officers went to that bedroom. Two children, ages 3 and 4, were in there watching television. One of the officers took the children into the kitchen with Gwen and Charlotte Johnson, and the officers searched the room.
 

 During the search, which was videotaped, the officers recovered seven pieces of crack cocaine and a razor blade from the top of the television, a postal scale, and a large plastic bag containing twenty smaller bags of suspected marijuana from a homemade clothes line which ran from wall to wall. The mattress was then lifted, and the officers recovered two unloaded weapons and a paper bag containing marijuana residue as well as papers which identified defendant and a Visa credit card with defendant’s name on it.
 

 The officers also found three small bags of marijuana, live rounds of ammunition, two boxes of sandwich bags, a plastic cup
 
 *259
 
 with some cellophane plastic wrap, and some “corner bags.” Hanging on the window shade area was a cooler bag which contained 91.4 grams of marijuana stems and seeds. The officers then searched the remainder of the residence, and found, in the hallway where Courtney Johnson was apprehended, a bag stuffed into a hole in the wall containing approximately thirteen bags of marijuana.
 

 Natalie Mayeaux of the Louisiana State Police Crime Lab testified that she tested the evidence in this case that was submitted by the St. James Parish Sheriffs Office and determined that Exhibits 1, 3, and 4A contained cocaine, and that | .^Exhibits 5, 6, 7A, and 7B contained marijuana. Ms. Mayeaux also determined that Exhibits 3 and 4A had a combined weight of 17.54 grams; Exhibits 5, 6, and 7A had a combined weight of 55.27 grams; and Exhibit 7B had a net weight of 1.03 grams.
 
 [3]
 

 Shon Cook, a narcotics detective with the St. James Parish Sheriffs Office, testified that he was familiar with how drug transactions were accomplished, and that during his employment, he had become familiar with the approximate street value of drugs. Detective Cook explained that the street value of marijuana was approximately $20 per gram, and that there were 28 grams in an ounce. He also explained that the street value of cocaine was approximately $100 per gram.
 

 After the State rested its case, Gwen Johnson, defendant’s mother, testified that she was home on the night of July 18, 2003, when defendant was arrested. On that evening, she was with her granddaughter and her sister, Charlotte Johnson, who was schizophrenic and is now deceased. As Gwen Johnson was cleaning the house, the officers kicked in her door, pulled guns, put them down on the floor, and told them not to move. The children got scared and started crying so she went to the back to see what was happening and to calm the children down. Gwen Johnson testified that defendant and Courtney Johnson were living there “on and off,” that she never saw defendant bring drugs or a gun into the house, and that she did not know there were drugs in the house.
 

 ADMISSION OF VIDEOTAPE EVIDENCE
 

 On appeal, defendant argues that the trial judge erred by allowing into evidence a redacted videotape made by the police during the execution of a search warrant at the house where he was living. He specifically contends that the State | c,failed to timely disclose the evidence and further that the videotape was more prejudicial than probative. For the reasons that follow, we find no error in the trial court’s admission of the videotape.
 

 At the beginning of trial, the prosecutor and defense counsel had a discussion with the judge about the introduction of the videotape of the search of the house. Defendant maintained that the videotape should be excluded because it was never provided to defense counsel; and, in re
 
 *260
 
 sponse, the State claimed that it was part of open file discovery that was granted in this case.
 

 After opening statements, the court recessed and allowed defense counsel the opportunity to view the videotape. After viewing the tape, defense counsel argued that it was prejudicial. The trial judge refused to allow the videotape into evidence in its current form because there was a narrative on it. The trial judge instructed the prosecutor to take out the audio portion as well as the gaps where the officers appeared to be looking through papers. Over defendant’s objection, the trial judge admitted the videotape in a compressed form without the narrative and showing only the items that were actually found in the search. The videotape was thereafter played for the jury during Lieutenant Duhe’s testimony.
 

 After Duhe’s testimony was concluded, defense counsel again objected to the videotape as highly prejudicial, and in particular, objected to the momentary image of the two children and a lady holding them. He argued that the videotape showed that the kids were there and somehow involved in this incident. The trial court noted defendant’s objection and commented that he did not find that portion of the tape to be prejudicial and that he allowed it in “only after the inferences raised by the defendant that the only other person in the house was Ms. Charlotte, who was schizophrenic and may have placed the drugs.”
 

 After the trial testimony was completed, defense counsel moved for a mistrial based upon the late disclosure of the videotape and the prejudicial effect of |7its admission. The trial judge denied the motion for mistrial, noting that he allowed the defense to view the videotape prior to allowing it into evidence and he had redacted all objectionable portions. The trial judge further noted that the videotape would have been allowed as impeachment evidence after the testimony of Ms. Johnson.
 

 Defendant now contends that the trial court erred in admitting the videotape into evidence. He first argues that the videotape should have been excluded because the State did not provide it to him in a timely fashion during discovery. Defendant contends that the State’s failure to disclose the videotape prejudiced him in that he rejected a plea offer based upon his misapprehension of the strength of the State’s case; and he was denied the opportunity to prepare a proper defense to evidence he did not know was going to be presented.
 

 The State responds that pursuant to documents produced in connection with open file discovery, the defense was put on notice two years prior to trial of the existence of the videotape. The State further responds the defense was aware of the contents of the videotape as evidenced by detailed police reports filed in connection with this case and the extensive preliminary examination.
 

 LSA-C.Cr.P. art. 718(2) requires the State, on defendant’s motion, to produce documents and tangible objects that are within its possession, custody or control and that are intended for use by the State as evidence at the trial. The State is under a continuing obligation to promptly disclose additional evidence that may be discovered or that it decides to use as evidence at trial. LSA-C.Cr.P. art. 729.3. When a party fails to comply with the provisions of the discovery articles, “the court may order such party to permit the discovery or inspection, grant a continuance, order a mistrial on motion of the defendant, prohibit the party from introducing into evidence the subject matter not disclosed, or enter such other order, other than dismissal, as may be appropriate.” LSA-C.Cr.P. art. 729.5(A). It |Ris
 
 *261
 
 within the trial court’s discretion to choose an appropriate remedy for a discovery right violation that will offset any possible prejudice.
 
 State v. Chaplain,
 
 03-0338, p. 4 (La.App. 5 Cir. 7/29/03), 852 So.2d 1088, 1089.
 

 The State’s failure to comply with discovery procedures does not automatically require reversal. The appellate court must examine the circumstances of the case to determine whether the defendant was prejudiced, and whether any prejudice resulting from the State’s non-compliance with discovery procedure caused the trier-of-fact to reach the wrong conclusion.
 
 State v. King,
 
 06-554, pp. 17-18 (La.App. 5 Cir. 1/16/07), 951 So.2d 384, 396,
 
 writ denied,
 
 07-371 (La.5/4/07), 956 So.2d 600,
 
 citing State v. Sweeney,
 
 443 So.2d 522, 527 (La.1983).
 

 In
 
 State v. Smith,
 
 99-1020, pp. 6-7 (La.App. 5 Cir. 2/29/00), 757 So.2d 74, 77-78,
 
 writs denied,
 
 00-1017 (La.3/30/01), 788 So.2d 439 and 01-854 (La.11/21/01), 802 So.2d 631, this Court explained:
 

 The discovery articles are intended to eliminate unwarranted prejudice which could arise from surprise testimony and evidence, to permit the defense to answer the State’s case, and to allow the defendant to properly assess the strength of the State’s evidence in preparing a defense. When the defendant is lulled into a misapprehension of the strength of the State’s case through the prosecution’s failure to disclose timely or fully, and the defendant suffers prejudice when the undisclosed evidence is used against him, basic unfairness results which constitutes reversible error. However, a conviction will not be reversed on the basis of a discovery violation unless prejudice is shown by the trial court’s adverse ruling.
 

 In the present case, the record reflects that defendant filed numerous discovery motions in March and June of 2004 seeking discovery, disclosure, and inspection of the evidence, including the police report. On July 14, 2004, the State filed an “Answer to Defendant’s Request for Motion for Discovery, Disclosure, and Inspection, and for a Bill of Particulars.” Attached to its answer was a copy of the police report and other documents which showed that the search of the residence had been videotaped. On October 25, 2004, a hearing was held on 19defendant’s discovery motions. The minute entry from that date indicates that defense counsel informed the trial judge that open file discovery was satisfactory. In addition, an order from October 27, 2004 shows that the trial judge allowed defendant to review all of the evidence in the custody of the Louisiana State Police Crime Lab and the St. James Parish Sheriffs Office.
 

 Our review of the record, and in particular the discovery documents, indicates that defendant had approximately two years notice prior to trial of the existence of the ■videotape and the contents contained therein. While defense counsel apparently did not view the videotape prior to trial, it certainly cannot be said that the State failed to disclose its existence. Moreover, the videotape showed the search of the house and the items recovered. The reports which were provided to defense counsel during discovery clearly listed all of the items recovered. Therefore, even though defense counsel did not view the videotape, he certainly should have known the items seized in the search. In addition, defendant did not demonstrate how his defense would have been different had he learned of the videotape prior to trial. Given these circumstances, it cannot be said that defendant was “lulled into a misapprehension of the strength of the State’s case by the absence of the video,” nor can
 
 *262
 
 it be said that the alleged late disclosure affected his ability to prepare a defense.
 

 In addition to claiming that the videotape should be excluded because of its untimely disclosure, defendant also argues that the videotape was improperly admitted because it was more prejudicial than probative. In particular, defendant contends that the tape was extremely prejudicial because it depicted the two children in such a manner as to make it appear that they were involved in the alleged drug trafficking. In contrast, the State contends that the video in no way implicated the children’s involvement in these crimes, and further, the videotape |inmerely corroborated testimony that the children were at the house watching television at the time of the search.
 

 According to LSA-C.E. art. 402, all relevant evidence is admissible, except as provided by law. Although relevant, evidence may nonetheless be excluded if the probative value is substantially outweighed by its prejudicial effect. LSA-C.E. art. 403. In the case of videotape evidence, any videotape that illustrates any fact, sheds light upon any factor at issue in the case, or reliably represents the person, place or thing depicted is admissible, provided its probative value outweighs any prejudicial effect. Further, the trial court’s ruling on the admissibility of evidence will generally not be disturbed on appeal unless the prejudicial effect of the evidence outweighs its probative value. State v.
 
 Casey,
 
 99-0023 (La.1/26/00), 775 So.2d 1022, 1037,
 
 cert. denied,
 
 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000);
 
 State v. Davis,
 
 92-1623, p. 23 (La.5/23/94), 637 So.2d 1012, 1026.
 

 In determining the admissibility of a videotape, the trial court should consider: 1) whether the videotape accurately depicts what it purports to represent; 2) whether it tends to establish a fact of the proponent’s case; and 3) whether it will aid the jury’s understanding. The trial court should also consider whether the videotape will cause undue prejudice, mislead the jury, confuse the issues or cause undue delay.
 
 State v. Sosa,
 
 04-507, pp. 11-12 (La.App. 5 Cir. 12/12/06), 948 So.2d 236, 243-44.
 

 In the instant case, we cannot say that the prejudicial effect outweighed the probative value of the evidence, and therefore, we find no error in the trial court’s admitting the redacted portion of the videotape into evidence. First, the videotape merely corroborated testimony that was presented at trial. Lieutenant Duhe testified as to how the search was conducted, what items of evidence were recovered, and where those items were found. Although defendant contends that the depiction of the children in the videotape was highly prejudicial, a review of Nthe videotape shows that that image was shown for only a brief moment, and that the majority of the videotape focused on the search itself and the location of the items that were recovered. Additionally, the videotape merely supported testimony of some police officers at trial that the children were in the house watching television at the time of the execution of the search warrant. It is further noted that on cross-examination, defense counsel questioned Lieutenant Duhe about the children, and defendant’s mother also testified about the presence of the children in the house. Based on our review of the testimony and the videotape, we find that defendant was in no way prejudiced by its admission and further note that the videotape certainly did not implicate the children in these crimes.
 

 Accordingly, we reject the arguments raised by defendant in this assigned error and conclude that the trial court did not
 
 *263
 
 err in admitting the redacted portion of the videotape into evidence.
 

 MULTIPLE OFFENDER PROCEEDINGS
 

 On appeal, defendant also challenges his multiple offender adjudication. He specifically argues that the trial court erred by failing to advise him of the allegations of the multiple bill and of his multiple offender rights. He contends that this error cannot be deemed harmless since he stipulated to the allegations in the multiple bill. We find merit to this argument and accordingly reverse defendant’s multiple offender adjudication and vacate his enhanced sentence.
 

 Pursuant to LSA-R.S. 15:529.1(D)(l)(a), the trial court shall inform defendant of the allegation contained in the multiple offender bill of information and of his right to be tried as to the truth thereof according to law and shall require the offender to say whether the allegations are true. LSA-R.S. 15:529.1 also implicitly requires that the trial court advise defendant of his right to remain silent.
 
 State v. Morgan,
 
 06-529, p. 22 (La.App. 5 Cir. 12/12/06), 948 So.2d 199, 213. Generally, a trial court’s failure to advise the defendant of his right to a hearing and | ]2his right to remain silent is considered harmless error when the defendant’s multiple offender status is established by competent evidence offered by the State at a hearing, rather than by admission of the defendant. However, there is reversible error when the defendant stipulates to the multiple bill without having been informed of his right to a hearing or his right to remain silent.
 
 State v. Knight,
 
 01-881, p. 4 (La.App. 5 Cir. 2/13/02), 811 So.2d 947, 949;
 
 State v. Schnyder,
 
 06-29 (La.App. 5 Cir. 6/28/06), 937 So.2d 396, 403.
 

 In
 
 State v. Bourgeois,
 
 08-211 (La.App. 5 Cir. 10/28/08), 998 So.2d 165, this Court reversed defendant’s multiple offender adjudication and vacated his enhanced sentence because defendant was not advised of his multiple offender rights as required by LSA-R.S. 15:529.1, and the State did not establish proof of the prior convictions by competent evidence. Likewise, in
 
 State v. Babineaux,
 
 08-705 (La.App. 5 Cir. 1/13/09), 8 So.3d 621, this Court reversed defendant’s multiple offender adjudication and vacated his enhanced sentence because defendant was not properly advised of his multiple offender rights.
 

 In the instant case, at the multiple bill hearing, the prosecutor said that he had met with defense counsel and that defendant had agreed to stipulate to the multiple bill. Neither defense counsel nor defendant said anything at the hearing. The record reflects that, during the hearing, the trial court did not advise defendant of the allegations of the multiple bill, his right to a formal hearing, to have the State prove its case under the multiple offender statute, or of his right to remain silent. Therefore, in accordance with established jurisprudence, we must reverse defendant’s multiple offender adjudication and vacate his enhanced sentence. We note that defendant is not protected by principles of double jeopardy from being tried again on the question of the prior felony conviction.
 
 State v. Bourgeois,
 
 998 So.2d at 166-67.
 

 | iSWith regard to the multiple offender proceedings, defendant also argues on appeal that the trial court erred by failing to specify which conviction was being enhanced. Defendant is correct in his assertion; however, it is not necessary to address this issue since we have vacated the multiple offender adjudication and sentence.
 
 [4]
 

 
 *264
 

 ERROR PATENT REVIEW
 

 We have also reviewed the record for errors patent in accordance with LSA-C.Cr.P. art. 920;
 
 State v. Oliveaux,
 
 312 So.2d 337 (La.1975); and
 
 State v. Weiland,
 
 556 So.2d 175 (La.App. 5 Cir.1990). Our review reveals several errors.
 

 First, with regard to defendant’s conviction for possession with intent to distribute marijuana, the trial court erroneously ordered the first two years of the sentence to be served without benefit of parole, probation, or suspension of sentence. At the time defendant committed the present offense, July 18, 2003, the penalty provision for possession with intent to distribute marijuana provided for a sentence of five to thirty years at hard labor and a fine of not more than $50,000. LSA-R.S. 40:966(B)(3). The penalty provision does not require or authorize the trial court to impose any of the sentence without benefits. Therefore, pursuant to LSA-C.Cr.P. art. 882, we amend defendant’s sentence on that count to delete the denial of parole, probation, or suspension for the first two years of his sentence.
 
 State v. Champagne,
 
 07-97 (La.App. 3 Cir. 5/30/07), 957 So.2d 962, 963-964. In accordance with our amendment, we remand the matter with instructions to the district court to amend the minute entry to reflect this change and to the clerk of court to transmit the amended minute entry to the officer in charge of the institution to which defendant has been sentenced as well as to the Louisiana Department of Public Safety and Corrections General Counsel.
 
 See
 
 LSA-C.Cr.P. art. 892(B)(2);
 
 State ex rel. Roland v. State,
 
 06-0244 (La.9/15/06), 937 So.2d 846.
 

 | l4Second, with regard to defendant’s possession with intent to distribute marijuana conviction, the record reflects that the trial court imposed an illegally lenient sentence because he did not order defendant to pay the fine of “not more than fifty thousand dollars” as set forth in LSA-R.S. 40:966B(3). This issue, however, was not raised by the State in the trial court or on appeal. We therefore decline to correct the illegally lenient sentence.
 
 State v. Taylor,
 
 07-869 (La.App. 5 Cir. 4/29/08), 985 So.2d 266, 270.
 

 Lastly, we note that the trial judge failed to properly advise defendant of the prescriptive period for post-conviction relief. The trial judge stated that defendant be given “two (2) years to ask for any post-conviction relief.” The minute entry dated January 23, 2007, also indicates that defendant was advised he had “two (2) years to request any post conviction relief including an out-of-time appeal according to C.Cr.P. art. 930.8.” This Court has held that the failure to advise a defendant that the prescriptive period runs from the time his conviction and sentence become final is incomplete.
 
 State v. Grant,
 
 04-341, p. 5 (La.App. 5 Cir. 10/26/04), 887 So.2d 596, 598. In accordance with the procedure now routinely employed by this Court, we advise defendant, by this opinion, that no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of LSA-C.Cr.P. art. 914 or 922.
 
 See State v. Smith,
 
 08-579 (La.App. 5 Cir. 2/25/09), 9 So.3d 238, 244, and
 
 State v. Ridgley,
 
 08-675 (La.App. 5 Cir.
 
 *265
 
 1/13/09), 7 So.3d 689, 703,
 
 writ denied,
 
 09-0374 (La.11/6/09), 21 So.3d 301.
 

 Accordingly, for the reasons stated herein, we affirm defendant’s convictions for possession with intent to distribute cocaine and possession with intent to distribute marijuana. We vacate his multiple offender adjudication and his enhanced sentence, and reinstate his original sentences, as amended. The | ^matter is remanded to the district court with instructions to correct the minute entry in accordance with the amendment to defendant’s sentence for possession with intent to distribute marijuana and for any other proceedings consistent with this opinion.
 

 CONVICTIONS AND SENTENCES, AS AMENDED, AFFIRMED; MULTIPLE OFFENDER ADJUDICATION AND SENTENCE VACATED,MATTER REMANDED FOR FURTHER PROCEEDINGS.
 

 [1]
 

 . It is noted that defendant filed several motions for out-of-time appeals, all of which were granted by the trial court.
 

 [2]
 

 . Throughout the record, Courtney Johnson is also referred to as Charles Courtney. For purposes of consistency, he will be referred to in this opinion as Courtney Johnson.
 

 [3]
 

 . At trial, Ms. Mayeaux testified in accordance with her scientific analysis reports that were introduced into evidence as State Exhibits 31 and 32. Her report identifies the exhibits as follows: Exhibit 1 — one clear plastic ziplock bag containing a rock-like substance; Exhibit 3 — one sealed evidence envelope containing one clear plastic bag containing a rock-like substance; Exhibit 4A — one clear plastic ziplock bag containing a rock-like substance; Exhibit 5 — one sealed evidence envelope containing one clear plastic bag containing twenty clear plastic bags containing green vegetable material; Exhibit 6 — one sealed evidence envelope containing one clear plastic bag containing thirteen clear plastic bags containing green vegetable matter; Exhibit 7A— four clear plastic bags, each containing green vegetable matter; Exhibit 7B — green vegetable matter.
 

 [4]
 

 . It is noted that the State based its multiple offender bill on both the possession with intent to distribute marijuana conviction and the possession with intent to distribute cocaine conviction.