653 So.2d 664 (1995)
STATE of Louisiana
v.
Timothy GIROD and Otis Magee.
No. 94-KA-853.
Court of Appeal of Louisiana, Fifth Circuit.
March 15, 1995.
*665 John M. Mamoulides, Dist. Atty., Terry M. Boudreaux, Michele R. Morel, Asst. Dist. Attys., Twenty-fourth Judicial Dist., Parish of Jefferson, Gretna, for plaintiff-appellee.
Bruce G. Whittaker, Staff Appellate Counsel, Twenty-fourth Judicial Dist., Indigent Defender Bd., Gretna, for defendants-appellants.
Before KLIEBERT, C.J., and GAUDIN and CANNELLA, JJ.
KLIEBERT, Chief Judge.
Defendants, Timothy Girod and Otis Magee, were charged jointly by bill of information with attempted first degree murder, a violation of LSA-R.S. 14:30. Magee was also charged with illegal possession of a firearm by a convicted felon (Count II), pursuant to LSA-R.S. 14:95.1. Both defendants pled not guilty. After a joint jury trial, Girod was found guilty as charged and Magee was found guilty of the responsive verdict of attempted second degree murder[1] and of the possession of firearm offense. The trial *666 court sentenced defendant Girod to thirty-five years at hard labor with credit for time served. Magee was sentenced to thirty years at hard labor for the attempted murder conviction. The trial court also sentenced Magee to ten years without probation, parole or suspension of sentence for the possession of firearm offense. Magee was given credit for time served on both sentences. The sentence on Count II was to run consecutively with the sentence on Count I. However, the state subsequently filed a multiple offender bill of information alleging that Magee had a previous felony conviction. After the hearing, the trial court adjudicated defendant an habitual offender. Thereafter, the trial court vacated Magee's original sentence and sentenced him to fifty years at hard labor for the attempted second degree murder conviction and ten years without probation, parole, or suspension of sentence on the firearm conviction, with credit for time served. The sentence on Count II was to run consecutively with his enhanced sentence on the attempted second degree murder conviction.
On appeal, both defendants contend that there was insufficient evidence to convict them of attempted murder (Magee does not appeal his conviction on the weapons charge). Also assigned are any errors patent. After careful review of the record, we affirm the conviction and sentence of defendant Timothy Girod for attempted first degree murder. We also affirm Otis Magee's conviction and sentence of attempted second degree murder.
On August 22, 1993, at approximately 11:30 p.m., Officer Stephen Newitt was dispatched to Terrytown, an area of Jefferson Parish, to investigate reports of illegal gunshots being fired. Once there, the officer saw a vehicle, a two-door Cutlass type, which he slowly approached. The vehicle sped off. Newitt followed, and the vehicle stopped a short distance away. As Newitt began to exit his unit, a man, later identified as defendant Girod, left the stopped vehicle. The officer heard a loud boom and saw a large flash. He testified that he had no doubt that the blast came from the area where Girod was standing. Then, he observed Girod throw something behind his back. The officer took position behind an open door of his vehicle and called for assistance. Newitt saw an assault weapon come out of the passenger door and slide a few feet toward Girod. No attempt was made by Girod to pick up this weapon. Two men remained in the vehicle; Magee, who was seated on the passenger side of the back seat, and Craig Williams, who was the driver. The officer ordered defendant Girod to lie on the ground and ordered Magee and Williams to exit the vehicle. At this point, three backup units arrived and all the men were arrested. The vehicle was searched and two more weapons were found inside the vehicle. As a result of a search, a shotgun was found in the area where Newitt had seen Girod throw an item. Additionally, the front of Newitt's police unit was damaged by gunfire. The officer was not injured.
During the trial, it was stipulated between the parties that no fingerprints were taken off the firearms. Girod and Magee were fully advised of their Miranda rights, and each gave statements after they were taken into custody. Girod stated that he "got out the car" with his hands up and "a gun shot went off and [he] got on the ground." In Magee's statement, he contends that when he started to exit the vehicle by putting his foot outside, he heard a blast; then, he returned his foot to the car. Magee also admitted knowing the firearms were in the vehicle and to possession of one of the guns before his arrest.
During the trial, Officer Newitt testified he saw a weapon sliding out from the passenger-side door underneath the vehicle to right between the back wheel and the bumper. Defense counsel asked Newitt what he observed Magee do after the blast was heard. Officer Newitt replied: "He was sitting on the passenger side of the vehicle, kind of bent over. Alls I could see was the top part of his head. And then after the weapon slid out from the car, it appeared he became agitated or worried again, jumping from one side of the vehicle to the other." The officer admitted that he never saw Magee aim a weapon at him or threaten him in any way. While he did not see exactly who slid the weapon, Newitt testified that it left the car *667 from Magee's area, the passenger side, and that the other occupant of the car, Williams, was located throughout the confrontation behind the wheel on the driver's side. He did not hear either of the men yell to Girod that they were sending him another gun.
Girod and Magee testified in their defense at trial. Girod stated that when they were stopped, he had the assault weapon on his lap. As he opened the door he put the weapon on the ground under the car. He pushed the door open all the way and exited the vehicle with his hands up in the air. By the time he walked to the back of his vehicle he heard a gun blast. He looked back and yelled that Williams and Magee were "trying to get [him] killed." Girod denied shooting a gun. On cross-examination, he stated that he had "no idea" of how the shotgun got from the vehicle to the street drain behind where he was standing. Further, he had no knowledge of a gun being thrown out of the automobile. However, Girod had seen the shotgun located between the seat and the door on the front passenger side of the vehicle.
Magee testified that he accidentally caused the shotgun to fire when he started to exit the vehicle. As he pushed the front passenger seat up, the shotgun fell out of the car onto the ground and fired. Then, he jumped back into the vehicle. During his testimony, Magee also admitted to his prior felony offenses. On cross-examination, Magee stated that as he exited the vehicle he kicked the shotgun, thus explaining how the gun was found near a street drain two to three feet away, instead of near the vehicle. Magee further testified that he did tell the police that the shotgun accidentally fired, but they failed to put this information in his statement. He denied reading the statement before he signed it.[2]
In their first assignment of error, defendants Girod and Magee argue that there was insufficient evidence to support their guilty verdicts for convictions of attempted first degree murder and for attempted second degree murder, respectively. As to Girod's conviction, defense counsel's brief contends that the jury failed to exclude a reasonable hypothesis of innocence, particularly that the shotgun fired accidentally. Defendant Girod argues that, given his closeness to the officer, had he been pointing a shotgun in the officer's direction, the officer would have been injured by the shot. Girod further argues that the fact that the officer was not injured proves a lack of intent to kill on his part. The State contends that Girod's intent to kill Officer Newitt was shown by the fact that Girod shot toward the officer with a double-barrelled shotgun at a distance of only ten feet.
Magee argues that because there are various reasonable hypotheses of innocence under the particular facts presented at trial, no reasonable person could find beyond a reasonable doubt that he had the specific intent to kill. As to Magee, the State argues the evidence is sufficient to prove the element of specific intent to convict Girod of attempted first degree murder and that Magee is a principal to the crime of attempted murder. It further argues that after Girod threw the shotgun behind him, Magee attempted to aid Girod by throwing him another gun to use to shoot the officer.
Additionally, the State initially argues that defendants should be barred from raising the issue of insufficiency of evidence on appeal because of their failure to file motions for post verdict judgment of acquittal. We note that such a motion was indeed filed on behalf of Girod but not Magee.
In State v. Allen, 440 So.2d 1330, 1332 (La.1983), the Louisiana Supreme Court mentioned the statement of law that the "correct vehicle for asserting ... [an argument regarding the insufficiency of the evidence] is the motion for a post verdict judgment of acquittal, LSA-C.Cr.P. art. 821, or the motion for new trial, LSA-C.Cr.P. art. 851." However, we will address the issue, even when not properly raised, if it is briefed pursuant to formal assignment of error. See State v. Allen, 440 So.2d at 1332-33.
*668 Pertinent to the instant case, first degree murder is the killing of a human being when the offender has a specific intent to kill or inflict great bodily harm upon a fireman or peace officer (which includes a deputy sheriff) engaged in the performance of his lawful duties. LSA-R.S. 14:30(A)(2)(6). Second degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. LSA-R.S. 14:30.1. State v. Myers, 584 So.2d 242, 248-50 (La.App. 5th Cir.), writ denied, 588 So.2d 105 (La.1991), cert. denied, 504 U.S. 912, 112 S.Ct. 1945, 118 L.Ed.2d 550 (1992). The crime of attempted murder, whether first or second degree, requires proof of the specific intent to kill and the commission of an overt act tending toward the accomplishment of that goal. State v. Huizar, 414 So.2d 741, 746 (La.1982); State v. Strother, 362 So.2d 508, 509 (La. 1978); State v. Butler, 322 So.2d 189 (La. 1975). The specific criminal intent required does not have to be proven as fact, but may be inferred from the circumstances and actions of the defendant. State v. Boyer, 406 So.2d 143 (La.1981). Furthermore, all persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid or abet in its commission, or directly or indirectly counsel or procure another to commit the crime are principals. LSA-R.S. 14:24. Only those persons who knowingly participate in the planning or execution of a crime are principals. State v. Pierre, 93-0893 (La. 2/3/94), 631 So.2d 427, 428. Moreover, an individual may only be convicted as a principal for those crimes for which he personally has the requisite mental state. It is not enough to find merely that Girod had the necessary mental state, since this intent cannot be inferred to Magee. See State v. Pierre, supra, and State v. Holmes, 388 So.2d 722, 726 (La.1980).
In evaluating the sufficiency of the evidence, the standard to be used by the appellate court is whether viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt of every element of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Mussall, 523 So.2d 1305 (La. 1988); State v. Myers, 584 So.2d at 249. The rule as to circumstantial evidence (when used to prove an offense) is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence. LSA-R.S. 15:438. This is not a purely separate test from the Jackson standard to be applied instead of the sufficiency of the evidence standard whenever circumstantial evidence forms the basis for the conviction. Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational trier of fact that the defendant is guilty beyond a reasonable doubt. State v. Porretto, 468 So.2d 1142 (La.1985); State v. Myers, 584 So.2d at 249.
The appellate court's primary function is not to redetermine a defendant's guilt or innocence in accordance with its appreciation of the facts and credibility of the witnesses. Rather, its function is to review the evidence in the light most favorable to the prosecution and determine whether there is sufficient evidence to support the verdict. State v. Myers, 584 So.2d at 250; State v. Burrow, 565 So.2d 972, 977 (La.App. 5th Cir.1990),writ denied, 572 So.2d 60 (La. 1991). From the totality of the evidence submitted by the prosecution, a rational trier of fact could have found that Girod was guilty of attempted first degree murder. The State had to show that defendant Girod specifically intended to kill the officer. Herein, the jury obviously chose to believe the officer's testimony instead of defendants' testimony. Accepting the officer's testimony as true, there is sufficient circumstantial evidence to prove that Girod had the requisite specific intent. A blast, which was obviously gunfire, came from the area where Girod was standing toward the police unit from which the officer was exiting. This gunfire caused damage to the officer's vehicle consistent with shots fired from a shotgun. Furthermore, immediately after the blast, the officer saw Girod throw "something" behind him. After a search of that area, a shotgun was found.
*669 As to Magee, it also appears that a reasonable person could have concluded that he had the specific intent to kill or that he had aided or abetted the commission of the crime of attempted murder of a policeman. While Magee did not admit to throwing the assault weapon to Girod, Officer Newitt observed him "bent down" on the passenger side of the car, the same side from where the weapon came. He also observed Magee become agitated right after the weapon was slid out of the car. Officer Newitt testified that Williams was always seated on the driver's side behind the wheel. The jury had a reasonable basis to conclude that it was Magee who slid the assault weapon out of the car towards Girod.
A jury's finding that a defendant aided and abetted in the commission of the crime "cannot be `mere speculation based upon guilt by association.'" See State v. Schwander, 345 So.2d 1173, 1175 (La.1977) [quoting State v. Williams, 310 So.2d 513, 515 (La.1975)]. However, Magee was not merely "associated" with Girod in this altercation. The officer's testimony showed strong circumstantial evidence that Magee participated by sending another weapon to Girod. The jury chose to believe Officer Newitt's testimony over that of Magee.
Appellants assign as error any errors patent on the face of the record. LSA-C.Cr.P. art. 920 provides: "the following matters and no others shall be considered on appeal: (1) An error designated in the assignments of error; and (2) An error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence."
For the purpose of an error patent review the "record" in a criminal case includes the caption, the time and place of holding court, the indictment or information and the endorsement thereon, the arraignment, the plea of the accused, the bill of particulars filed in connection with a short form indictment or information, the mentioning of the impaneling of the jury, the minute entry reflecting sequestration in a capital case, the verdict, and the judgment or sentence. See State v. Oliveaux, 312 So.2d 337 (La.1975) and State v. Weiland, 556 So.2d 175 (La.App. 5th Cir.1990).
In this record we have noticed two patent errors. The first is that the sentencing court failed to inform both defendants of the prescriptive period for applying for post-conviction relief as is mandated by LSA-C.Cr.P. art. 930.8 C. In addressing this type of error patent, our Court has remanded the matter to the trial court and ordered it to inform the defendant of the provisions of LSA-C.Cr.P. art. 930.8 by sending appropriate written notice to the defendant within ten days of the rendition of this opinion and to file written proof that defendant received the notice in the record of the proceedings. See State v. Kershaw, 94-141 (La.App. 5th Cir. 9/14/94), 643 So.2d 1289; see also State v. Procell, 626 So.2d 954 (La.App. 3rd Cir. 1993); State v. McSweeney, 619 So.2d 861 (La.App. 3rd Cir.1993); State v. Sumlin, 605 So.2d 608 (La.App. 2nd Cir.1992).
We also note an error patent in Magee's sentence based upon the multiple offender adjudication, which was imposed without reference to his ineligibility for probation or suspension of sentence, as required by the Multiple Offender Statute, LSA-R.S. 15:529.1 G. However, the trial judge did not suspend Magee's sentence, nor did he grant him probation. Thus, there is no error. State v. McDonald, 562 So.2d 25, 26 (La.App. 5th Cir.1990).
Accordingly, for the reasons assigned, we affirm the convictions of both defendants.
AFFIRMED AND REMANDED.
NOTES
[1] One who aids and abets in the commission of a crime may be charged and convicted with a higher or lower degree of crime depending on the mental element proved at trial. State v. McAllister, 366 So.2d 1340 (La.1978).
[2] The district court record contains a minute entry indicating the charge of attempted first degree murder against Craig Williams was dismissed by the State after the trial involving Girod and Magee.