CLARENCE E. McMANUS, Judge.
|2On January 26, 2009, the Jefferson Parish District Attorney filed a bill of information charging defendant, Deivon K. Trim,[1] with attempted second degree murder of Conway Dennis in violation of LSA-R.S. 14:27:30.1. Subsequently, on August 24, 2010, a superseding bill of information was filed charging Trim[2] with attempted first degree murder of Conway Dennis, (who was a witness to the murder of Frankie Williams on October 18, 2008), a violation of LSA-R.S. 14:27:30. After the trial court denied defendant’s motion in limine, allowing the State to introduce evidence that he and Dussett were suspects in the murder of Frankie Williams, defendant went to trial and was found guilty[3] as charged. Pursuant to a multiple offender adjudication, defendant was sentenced as a second felony offender to 40 years with the Department of Corrections giving him credit for time served. This appeal followed.
The following facts were adduced at trial. On October 18, 2008, Frankie Williams was murdered at a playground in the 3100 block of Helena Street, in | aKenner, Louisiana. There were no eyewitnesses to the murder; however, Conway Dennis, the victim in this case, told police that he had observed defendant and Dussett near the scene of the murder minutes before.[4] Based on the information provided by Dennis, defendant and Dussett were developed as suspects in the murder of Williams. At the time of trial, the murder investigation of Williams was still open.
Approximately one month later, on November 20, 2008, Officer Brad Boyd, a patrol officer with the Kenner Police Department, was dispatched to the 200 block of Clemson Drive in Kenner, Louisiana in response to calls indicating that shots were fired. Detective Jeff Adams of the Kenner Police Department was also dispatched to the scene as the lead detective. Eleven 9 mm shell casings were found scattered along the street and sidewalk as if someone were running and shooting a weapon. Officer Boyd spoke with a resident who had observed two black males in dark clothing, both chasing and firing at another individual who was running further ahead.
The victim in this case, Conway Dennis, (the person who was fired at on November 20, 2008), subsequently contacted headquarters and advised that he wanted to speak to a detective. Detective Adams met with Dennis, who gave a recorded statement to Adams in his police unit. Dennis named defendant and Dussett as the perpetrators who shot at him, and an arrest warrant was obtained.
Defendant subsequently turned himself in to the police on November 25, 2008, and gave a statement denying any involvement or knowledge in reference to the Williams murder or the attempted murder of Dennis. Defendant admitted that he knew Dussett, and declared that they were together three days before. LHowever, Dussett gave a statement after his arrest on the following day claiming the last time he was with defendant was a week before.
In this appeal, defendant Trim alleges that the admission of evidence concerning Frankie Williams’ murder violated the defendants’ right to a fair trial. He further *659 alleges that the evidence was insufficient to support this conviction.
In his second allegation of error, defendant argues that the State failed to prove beyond a reasonable doubt that he shot at the victim, or was involved in the murder of Williams. The State responds that the evidence was sufficient to convict defendant of attempted first degree murder.
When the issues on appeal relate to both the sufficiency of evidence and one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. State v. Hearold, 603 So.2d 731, 734 (La.1992).
The constitutional standard for testing the sufficiency of the evidence is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under this standard, a review of a criminal conviction record for sufficiency of evidence does not require the court to ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. State v. Jones, 08-20 (La.App. 5 Cir. 4/15/08), 985 So.2d 234, 240. Rather, the reviewing court is required to consider the whole record and determine whether any rational trier of fact would have found guilt beyond a reasonable doubt. Id.
“Circumstantial evidence is evidence of facts or circumstances from which one might infer or conclude, according to reason and common experience, the existence of other connected facts.” State v. Kempton, 01-572, p. 7 (La.App. 5 Cir. 12/12/01), 806 So.2d 718, 722. “The rule as to circumstantial evidence is: [ ¿assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” LSA-R.S. 15:438. However, this requirement does not establish a standard that is separate from the Jackson standard, but instead provides a helpful methodology for determining the existence of reasonable doubt. State v. Lathers, 03-941 (La.App. 5 Cir. 2/23/04), 868 So.2d 881, 884. To support the conclusion that the defendant is guilty beyond a reasonable doubt, all evidence, both direct and circumstantial, must be sufficient. Id. (citation omitted).
When the trier of fact is confronted by conflicting testimony, the determination of that fact rests solely with that judge or jury, who may accept or reject, in whole or in part, the testimony of any witness. State v. Bailey, 04-85 (La.App. 5 Cir. 5/26/04), 875 So.2d 949, 955, writ denied, 04-1605 (La.11/15/04), 887 So.2d 476, cert. denied, 546 U.S. 981, 126 S.Ct. 554, 163 L.Ed.2d 468 (2005). In the absence of internal contradiction or irreconcilable conflict with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient to convict. State v. Addison, 00-1730, p. 4 (La.App. 5 Cir. 5/16/01), 788 So.2d 608, 613, writ denied, 01-1660 (La.4/26/02), 814 So.2d 549. Further, it is not the function of the appellate court to assess the credibility of witnesses or to reweigh the evidence absent impingement on the fundamental due process of law. Bailey, supra.
Defendant was convicted of the attempted first degree murder of Conway Dennis. According to LSA-R.S. 14:30(A)(9)(a), first degree murder is the killing of a human being when the offender has a specific intent to kill or inflict great bodily harm upon a victim who was a witness to a crime or was a member of the immediate family of a witness to a crime committed on a prior occasion and the killing was committed for the purpose of preventing or influencing the victim’s | ^testimony in any criminal action or proceeding whether or not *660 such action or proceeding had been commenced. LSA-R.S. 14:30(B)(3) defines a “witness” as “any person who has testified or is expected to testify for the prosecution, or who, by reason of having relevant information, is subject to call or likely to be called as a witness for the prosecution, whether or not any action or proceeding has yet commenced.”
The crime of attempted murder, whether first or second degree, requires proof of the specific intent to kill and the commission of an overt act tending toward the accomplishment of that goal. State v. Girod, 94-853, pp. 5-6 (La.App. 5 Cir. 3/15/95), 653 So.2d 664, 668. Specific intent is “that state Of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.” LSA-R.S. 14:10(1). Because specific intent is a state of mind, it need not be proven as a fact, but may be inferred from the circumstances and actions of the accused. Girod, supra.
Specific intent to kill can be inferred from the intentional use of a deadly weapon such as a knife or a gun. State v. Knight, 09-359, p. 14 (La.App. 5 Cir. 2/9/10), 34 So.3d 307, 317, writ denied, 10-2444 (La.10/21/11), 73 So.3d 376. “The act of aiming a lethal weapon and discharging it in the direction of the victim supports a finding by the trier of fact that the defendant acted with specific intent to kill.” State v. Gonzalez, 07-449, p. 9 (La.App. 5 Cir. 12/27/07), 975 So.2d 3, 8, writ denied, 08-0228 (La.9/19/08), 992 So.2d 949. Whether a defendant possessed the requisite intent in a criminal case is a question for the trier-of-fact, and a review of the correctness of this determination is guided by the Jackson standard. Id.
17At trial the State presented evidence regarding the murder of Frankie Williams to establish that defendant’s intent and motive to kill Dennis was to prevent him from testifying about the murder. The State and defense offered a joint stipulation that Williams’ death was classified as a homicide due to a gunshot wound to the back of the head. Dennis testified that shortly before the murder he observed defendant and Dussett walking toward the playground where Williams was shot. Dennis further stated that Williams, his cousin, indicated that he had obtained a gun from Louis Cox to rob Antonio Robinson aka “Big Tony,” who was Dussett’s cousin, which presented a motive for the murder. Dennis, the victim, also identified defendant and Dussett in a surveillance video taken approximately 15 minutes before the murder. Dennis testified that although he was nervous, he spoke with police at Williams’ mother’s home a few days after the murder. Defendant and Dussett were developed as suspects in the Williams murder based on Dennis’ initial statement to police. However, no formal charges were ever filed.
The following evidence was presented by the State in an effort to establish that defendant, along with Dussett, actually attempted to kill Dennis. Detective Adams testified that in his statement, Dennis asserted that he believed defendant and Dus-sett were “after him” because they were persons of interest in the Williams murder. Dennis testified that, subsequent to the murder of Williams, defendant and Dus-sett both shot at him with firearms and that 11 shell casings from a 9 mm firearm were recovered from the scene. Dennis further declared that the only people who would want to kill him were the people affiliated with William’s murder, and after Williams was murdered, he knew they were going to try to kill him.
|8We find sufficient evidence to establish that Dennis was subject to being *661 called as a witness in a future proceeding by reason of having relevant information regarding the murder of Frankie Williams, and that defendant fired at him with the specific intent to kill him to prevent him from ever testifying.
Notably, defendant does not allege that the specific elements of the crime were not proven; rather he contends that the victim’s testimony should have been discredited.
In an effort to discredit Dennis, the defense offered the testimony of Phillip Dussett, Sr., the co-defendant’s father. Dussett, Sr. testified that he was friends with Conway Dennis, Sr., the victim’s father. Dussett, Sr. further testified that Dennis, Sr. came to his home and apprised him of the situation between their sons, and put him in touch with Dennis. Dus-sett, Sr. testified that he and his son spoke with Dennis on the phone using three-way calling. Dussett, Sr. claimed that Dennis attempted to extort money in exchange for dropping the attempted murder charges; however, Dussett, Sr. refused and did not have access to that kind of money. Dus-sett, Sr. further testified that Dennis said: “[Y]ou may not have nothing [sic] to do with this, but I know you’re capable of it because we used to hang together.”
Dennis confirmed in his testimony that he spoke with the Dussetts; however, he denied ever asking for money and explained that Dussett, Sr. offered him money not to testify. Moreover, he identified defendant and Dussett as the shooters shortly after the shooting took place, explaining that he knew them from the neighborhood. The eleven shell casings found at the scene and the 911 calls, which indicated that two people were running and shooting at a third individual who was farther ahead of them, also corroborate Dennis’ version of events. |3Interestingly, defendants’ statements about when they last saw each other contradicted one another, calling their credibility into question.[5]
It was within the jury’s purview to believe Dennis’ version of events. Accordingly, we find that in the light most favorable to the State there was sufficient evidence to convict defendant of the attempted first degree murder of Conway Dennis.
In his first allegation of error, the defendant contends that the admission of evidence concerning Frankie Williams’ murder violated the defendant’s right to a fair trial. Defendant argues that evidence indicating that he was a suspect in the murder of Frankie Williams was inadmissible for two reasons. First, he argues that the State violated discovery rules and his right to a fair trial when it untimely disclosed information regarding the Williams’ murder. Next, he argues that this evidence was inadmissible as other crimes evidence.
In addressing the issue regarding discovery violations, defendant maintains that he did not receive any information regarding his involvement in the Williams murder until June 15, 2011, less than two months before trial. He contends that due to the State’s untimely submission of discovery with respect to the Williams murder, he misconstrued the strength of the State’s case against him. He argues that once apprised of that information, he was left with minimal time to prepare a defense; therefore, he was “gravely prejudiced.”
The State responds that defendant had notice of his suspected involvement in the Williams murder long before trial. It av *662 ers that the trial court remedied any alleged discovery violations by granting a continuance and excluding certain evidence provided to the defense on June 15, 2011.
| inLSA-C.Cr.P. art. 718(2) requires the State, on the defendant’s motion, to produce documents and tangible objects within its possession, custody or control that are intended for use by the State as evidence at trial. LSA-C.Cr.P. art. 719 gives the defendant the right, upon motion, to inspect and copy, photograph, or otherwise reproduce the results of scientific tests or experiments made in connection with his case that are within the State’s knowledge, possession, custody and control, and are intended for use at trial. The State is under a continuing obligation to promptly disclose additional evidence that may be discovered or that it decides to use as evidence at trial. LSA-C.Cr.P. art. 729.3.
When a party to a criminal proceeding fails to comply with the provisions of the discovery articles, “the court may order such party to permit the discovery or inspection, grant a continuance, order a mistrial on motion of the defendant, prohibit the party from introducing into evidence the subject matter not disclosed, or enter such other order, other than dismissal, as may be appropriate.” LSA-C.Cr.P. art. 729.5(A); State v. Donnaud, 04-624 (La.App. 5 Cir. 2/15/05), 896 So.2d 1151, 1158.
The State’s failure to comply with discovery procedures does not automatically require reversal. The appellate court must examine the circumstances of the case to determine whether the defendant was prejudiced by the State’s non-compliance, and whether such prejudice caused the trier of fact to reach the wrong conclusion. State v. Sweeney, 443 So.2d 522, 527 (La.1983); State v. Donnaud, supra.
In State v. Smith, 99-1020 (La.App. 5 Cir. 2/29/00), 757 So.2d 74, 77-78, writs denied, 00-1017 (La.3/30/01), 788 So.2d 439, 01-0854 (La.11/21/01), 802 So.2d 631, this court commented:
| nThe discovery articles are intended to eliminate unwarranted prejudice which could arise from surprise testimony and evidence, to permit the defense to answer the State’s case, and to allow the defendant to properly assess the strength of the State’s evidence in preparing a defense. When the defendant is lulled into a misapprehension of the strength of the State’s case through the prosecution’s failure to disclose timely or fully, and the defendant suffers prejudice when the undisclosed evidence is used against him, basic unfairness results which constitutes reversible error. However, a conviction will not be reversed on the basis of a discovery violation unless prejudice is shown by the trial court’s adverse ruling.
(citations omitted).
In the instant case, defendant filed a pre-trial motion for discovery on February 3, 2009, seeking “any initial police reports relating to the offense for which defendant was charged.” He also requested that the State observe its continuing duty to disclose information should it discover or decide to use additional evidence that is or may be subject to discovery or inspection. On August 24, 2010, the State filed a superseding bill of information charging defendant and Dussett with attempted first degree murder of Dennis. The bill of information indicates that Dennis was a witness to the murder of Frankie Williams.
Prior to trial, defendant filed a motion and supplemental motion in limine to prohibit the State from introducing evidence that he was a suspect in the murder of Williams, a crime for which he was never charged. Defendant expressed a particular issue with a supplemental investigative report that was received on June 15, 2011. *663 He argued that this evidence should be excluded because the State violated discovery rules in providing untimely disclosure of the information, leaving him no time to investigate or prepare a defense; the evidence of this other crime required notice and hearing, pursuant to LSA-C.E. 404(B); the evidence had no probative value to the instant crime, and it was highly prejudicial.
The trial court granted Trim’s motion in limine and excluded the State from introducing any reports provided after June 9, 2011. However, it deferred its 112ruling on whether evidence that Trim and Dussett were suspects in the Williams murder could be admitted. It noted it did not believe its decision would hinge on the timing of the information, rather the probative and prejudicial value of the evidence.
Subsequently, the trial court denied Trim’s motion in limine, finding that evidence showing that he was a potential suspect in the Frankie Williams murder should not be excluded from trial. The court found that the defense had ample notice that Dennis was a witness to the murder of Frankie Williams and defendants were suspects in that crime. In particular, it noted that the superseding bill of information filed on August 24, 2010, gave notice of Dennis’ status as a witness to a crime, and the police report dated December 19, 2008, “which the defense had for quite some time,” described defendants as suspects. In addition, the trial court granted defendant a continuance for over one month additional time to prepare for trial.
With respect to defendant’s contention that the State violated discovery rules, we find that there was no error in the trial court’s ruling. First, there is no duty on the part of the State to disclose information which it does not possess. Thus, the exclusion of evidence is not an available sanction when the State has promptly informed the defendant of the receipt of additional evidence, even where the new matter is uncovered at an inopportune time for the defense. State v. Williams, 448 So.2d 659, 664 (La.1984). Here, the State immediately provided the supplemental investigative report at issue. The report was dated June 15, 2011, and the State turned it over to the defense on June 15, 2011, as a courtesy to the defense so that they would be aware of all of the possible testimony from the detectives and most of the other reports were duplicate copies of discovery the State had previously provided to the defense. The supplemental report further | ^detailed information already provided rather than provided new information, and the State made the reports available when they were received. Moreover, the trial court excluded the admission of the report.
Next, it does not appear that defendant was surprised by the contents of the report, as the trial court noted he was well aware in advance of the scheduled trial date that Dennis, the victim, was a witness to the murder of Frankie Williams, and that he was a suspect in that murder. In fact, defendant conceded that he had previously received a report dated December 19, 2008, and that report reflected that he was a suspect in the Williams murder.
In addition, the trial court granted Trim a continuance, allowing him additional time to prepare for trial, which is an appropriate remedial measure for a discovery violation. LSA-C.Cr.P. art. 729.5. See State v. Harris, 00-3459 (La.2/26/02), 812 So.2d 612, 617, where the Louisiana Supreme Court found that under LSA-C.Cr.P. art. 729.5, the article which details the arsenal of sanctions available for discovery violations, no particular remedy is mandated. Moreover, it appears that defense counsel *664 effectively cross-examined witnesses as to the late disclosures and the fact that defendant was not the only suspect in the murder; and the effects of a discovery violation may be remedied by effective cross-examination. State v. McGinnis, 04-1286 (La.App. 5 Cir. 10/6/05), 917 So.2d 471, 485-486, writ denied, 05-2469 (La.4/28/06), 927 So.2d 283.
Accordingly, assuming the State did in fact violate discovery rules, defendant was not prejudiced by any such violation as he had advanced notice, the late reports were not admitted, he received additional time to prepare, and effectively cross-examined the witnesses.
Defendant also contests the admission of a surveillance video that showed he was present at the murder scene approximately 15 minutes before, arguing that it 114was discovered only 6 weeks before trial. However, at trial, the State submitted the videotape and Dennis identified defendant and Dussett on the tape. Defendant made no objections to the introduction of that videotape at trial. Accordingly, this issue was waived. See LSA-C.Cr.P. art. 841(A).
With respect to the argument that the trial court erred in admitting other crimes evidence concerning defendant’s involvement in the murder of Williams, he challenges both the admissibility of the testimonial evidence of the Williams murder and the videotape placing him at the scene of the murder shortly before it occurred. He argues that this evidence was based on hearsay[6] and innuendo, it was not tested against the clear and convincing standard set forth in Prieur, and the State introduced it only to portray him as a person of criminal character.
Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. LSA-C.E. art. 401. All relevant evidence is admissible except as otherwise provided by positive law. Evidence which is not relevant is not admissible. LSA-C.E. art. 402. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay, or waste of time. LSA-C.E. art. 403.
The fundamental rule in Louisiana governing the use of evidence of other crimes, wrongs, or acts is that such evidence is not admissible to prove that the accused committed the charged crime because he has committed other such crimes in the past. See State v. Hatcher, 372 So.2d 1024, 1036 (La.1979) (Tate, J., concurring on rehearing).
11sLa. C.E. art. 404(B)(1) provides:
Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part *665 of the act or transaction that is the subject of the present proceeding.
Other circuits have found that “the prohibition against other crimes evidence pertains to other crimes by the defendant, not other crimes by someone else.” State v. Grant, 41,745, pp. 16-17 (La.App. 2 Cir. 4/4/07), 954 So.2d 823, 836, writ denied, 07-1193 (La.12/7/07), 969 So.2d 629, (citing State v. Buffington, 97-2423 (La.App. 4 Cir. 2/17/99), 731 So.2d 340). Rulings on the admissibility of evidence will not be disturbed, absent an abuse of discretion. State v. Olivieri, 03-563, p. 19 (La.App. 5 Cir. 10/28/03), 860 So.2d 207, 218.
Here the trial court denied defendant’s motion in limine finding that he was given ample notice that he was a suspect in the Williams murder. The trial court also stated that it would “allow the defendants to make the appropriate objections as to admissibility, relevance, hearsay, et cet-era.” At trial, the State presented evidence that defendant and Dussett were suspects in the Williams murder and that defendant was observed walking towards Williams and the playground where he was murdered. However there were no eyewitnesses to the crime. The State never presented evidence which indicated that defendant or Dussett actually committed the murder of Williams. Likewise, it presented evidence that Lewis Cox and Antonio Robinson were also suspects in the open investigation and that no one was |ir,ever charged with the murder, making it plausible that Louis Cox[7] or Antonio Robinson murdered Williams and defendant and Dussett attempted to kill Dennis to prevent him from testifying as to that information. Evidence that defendant was a suspect in the Williams murder does not constitute other crimes evidence of defendant, as the State did not, and was not, attempting to prove that he actually murdered Williams.
Additionally, this evidence was highly relevant and probative, because the State had to show that defendant was observed at the scene and was somehow connected to the Williams murder in order to prove that his attempt to kill Dennis was to prevent him from testifying about his knowledge of the murder in the future. Likewise, the prejudicial effect was minimal when considering the State presented evidence that defendant was never charged and that there were other suspects in the murder. We find that the trial court did not err in admitting the evidence that defendant was a suspect in the Williams murder.
We find defendant’s allegation of error to be without merit.
We have also reviewed the record for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990), and find none which merit corrective action.
Considering the foregoing, the defendant’s conviction and sentence are affirmed.

AFFIRMED

. Defendant Trim was charged and tried along with his co-defendant, Phillip G. Dus-sett, Jr. However, this appeal relates to Trim only.

. Dussett was also charged as a co-defendant.

. Dussett was also found guilty.

. Conway Dennis and Frankie Williams were cousins.

. Dussett, Sr. also admitted to being convicted of aggravated battery in 1984, which also could have affected his credibility considering that Dennis did not have a criminal record.

. It is noted that defense counsel did not make any hearsay objections to the testimony at trial.

. Dennis also observed Louis Cox, among others, with defendant and Dussett on the day of the murder.