ROBERT M. MURPHY, Judge.
1 ¡^Defendant, Troy W. Deweese, Jr., appeals his conviction and sentence for attempted manslaughter of Gavin Ratcliff in violation of La. R.S. 14:27 and 14:31. For the reasons that follow, we affirm defendant’s conviction and sentence. Defendant’s application for post-conviction relief, filed in this Court on August 27, 2013 during the pendency of this appeal, is denied as premature, as defendant must first exhaust whatever appellate rights he has. La. C.Cr.P. art. 924.1.

FACTS AND PROCEDURAL HISTORY

On October 24, 2010, the victim, Gavin Ratcliff, a Minnesota resident, was in Ken-ner, Louisiana visiting his sister Nicole Ratcliff and her fiancé, Troy W. Deweese, Jr., defendant herein. On that evening, the victim, defendant, and Ms. Ratcliff went to Halloween costume parties before *1188 returning to the apartment Ms. Ratcliff shared with defendant, located at 616 Vou-vray Drive, Apartment C, in Kenner. On the way back to the apartment after the second Halloween party, they picked up another friend David Normand. Mr. Rat-cliff and defendant had consumed about 10 drinks between them that evening.
|sAn argument ensued in the apartment. Mr. Ratcliff was upset that defendant had searched his bag and found heroin needles. Ms. Ratcliff argued with defendant regarding his passing out in bed with another girl. She admitted that her brother may have also called her a bitch. She tried to calm things down and told defendant to go upstairs to bed.
Defendant went upstairs while the others discussed how “heated” the argument had gotten. Defendant returned downstairs stating, “You still want to talk sh*t now.” He had a bathroom shower rod in one hand and a serrated knife from the bedroom nightstand in the other hand behind his back as he came down the steps. Ms. Ratcliff and Normand testified that they did not see what defendant held in his concealed hand. Defendant pushed by Normand to get past him. The victim got up and walked towards defendant, who, without stopping, rushed towards the victim. Ms. Ratcliff testified that her brother did not retreat, but that also he was not running. Mr. Ratcliff testified that he was defending himself and that when defendant got close, defendant pulled the serrated knife out from behind his back and stabbed him in the upper abdomen before running away. Ms. Ratcliff testified she did not recognize which object was used to stab her brother other than that it was shiny. Normand testified that defendant hit the victim with the hand not holding the pole.
The victim took four steps before collapsing as defendant ran from the apartment partially clothed. Normand ran after defendant but was unable to keep up; Normand returned to the apartment and put pressure on the victim’s wound. Ms. Ratcliff called 9-1-1. Within 45 seconds, the victim was telling his sister that he loved her.
Ms. Ratcliff acknowledged that she initially used the word “accident” on the 9-1-1 recording to describe the event because she was not ready to deal with the |4consequences of what her fiancé had just done. She testified that she was focused on getting her brother to the hospital and did not want to cause any delay on the phone. She described that she was in shock, and it took her time to realize exactly what had happened. She testified she never believed it was an accident and notes that defendant went into two different rooms to grab two separate weapons before returning downstairs.
Kenner Police Officer Robert Lee arrived on the scene of the stabbing at 4:07 a.m. Ms. Ratcliff advised that her fiancé had stabbed her brother. An ambulance transported the victim to the hospital; Officer Lee obtained statements from Ms. Ratcliff and Normand. Kenner Police Office Matthew Glapion was working off-duty at Tastee Donuts on Loyola Drive when he observed defendant run into the parking lot and speak to an unknown person while gesturing that someone had held a knife to him or that he stabbed someone. Glapion then approached defendant who stated that he “thought he had killed his brother-in-law.” Glapion learned via police radio that Kenner Police were working a stabbing on Vouvray. After Officer Emile Sanchez arrived at the donut shop, defendant advised Officer Sanchez that he thought he killed his brother-in-law. Officer Sanchez then placed defendant under *1189 arrest and advised him of his Miranda[1] rights.
Dr. Alan Marr, a trauma surgeon at the Interim Louisiana Public Hospital,[2] was qualified as an expert in the field of trauma and surgical critical care. On October 4, 2010, at about 4:40 a.m., Dr. Marr treated the victim, who had a stab wound to the left upper portion of his abdomen. Dr. Marr testified that the victim’s condition required him to be brought directly to the operating room. At that time, Dr. Marr found two holes within the victim’s colon. Dr. Marr testified that the wound extended into the victim’s hilum, where the blood vessels enter the spleen, |fithrough his spleen, then through his diaphragm behind the spleen and into his chest cavity. Dr. Marr testified that the injury would have to be approximately eight to ten inches deep in order to puncture all of those organs. He testified that it would require a great deal of force to cause the injury because tissues are relatively tough. Dr. Marr testified that it would be very difficult to get through all of the muscles and different organs without putting a great deal of force behind it.
Dr. Marr testified that the damage to the victim’s colon caused a moderate amount of contamination. The victim lost at least one to two units of blood. Dr. Marr testified that the injury was potentially very lethal, and the victim would have died had it been untreated. Dr. Marr testified that the medical treatment saved the victim’s life. Dr. Marr testified that the victim underwent at least ten surgeries. The victim was released from the hospital in January of 2011. The victim developed several abscesses and infections due to the contamination from the damage to the colon, which required several surgeries.
Dr. Marr testified that some of the victim’s organs were permanently damaged including the complete loss of his spleen. In addition, one side of the victim’s lungs was permanently damaged, and a small portion of his lung had to be removed. Dr. Marr testified that the victim is unable to breathe as well as the average person his age. The victim had to have a colostomy, a procedure where the colon is brought out to the skin in order for stool passage out on the belly wall instead of the backside. This is typically done with a colostomy bag, which the victim had to live with for more than one year.
Even after being discharged from the hospital in January of 2011, Dr. Marr continued to treat the victim on a number of occasions to deal with an advanced infection because the abscess in his chest returned. The victim also had to have chest surgery, and a part of his ribs was removed. Dr. Marr testified that after 1 fibeing discharged from the hospital initially, the victim was required to have at least three additional surgeries. Dr. Marr testified that if the medical records showed that the victim underwent approximately 19 surgeries, then those records would be accurate. Dr. Marr testified that defendant’s probability of death was extremely high, but for his medical treatment.
On February 4, 2011, the Jefferson Parish District Attorney filed a bill of information charging defendant, Troy W. Dew-eese, Jr., with attempted second degree murder of Gavin[3] Ratcliff in "violation of *1190 La. R.S. 14:27:30.1. At his arraignment on February 7, 2011, defendant pled • not guilty to this charge. On February 8, 2011, defendant filed omnibus motions.[4] On April 5, 2012, after a motion hearing, defendant’s motion to suppress statement was denied. On June 14, 2012, the trial court heard defendant’s pro se motion for preliminary examination and motion to quash, which were both denied.[5]
On July 19, 2012, defendant proceeded to a judge trial, and on July 20, 2012, defendant was found guilty of the lesser charge of attempted manslaughter. After being convicted, defendant made an oral notice of intent to seek an appeal. On August 6, 2012, defendant filed a motion for new trial which was denied on the same date. After waiving sentencing delays, defendant was immediately sentenced to ten years imprisonment in the Department of Corrections.
Also on August 6, 2012, the State filed a multiple offender bill of information alleging defendant was a second felony offender. Defendant stipulated 17to these allegations. Defendant’s original sentence was vacated, and defendant was resentenced to ten years imprisonment in the Department of Corrections with credit for time served. The sentence was imposed without benefit of probation or suspension of sentence, and it was ordered to run concurrently with any other sentence defendant may have been serving since the date of his arrest. Defendant again noted for the record his oral motion for appeal.
Defendant filed a written motion for appeal on August 7, 2012, and the motion was granted on August 14, 2012. Defendant’s timely[6] appeal followed. Subsequent to the lodging of the appeal, defendant filed an application for post-conviction relief on August 27, 2013.
In his sole assignment of error, defendant argues that the evidence presented was insufficient to support the conviction because the element of specific intent was not proved beyond a reasonable doubt. Specifically, defendant argues that the trial court’s determination that defendant did not have the specific intent for an attempted second degree murder conviction but then finding that defendant had the necessary specific intent for attempted manslaughter was inconsistent.[7] Defendant *1191 asserts that this inconsistency shows that the evidence was insufficient for the responsive verdict of attempted manslaughter. Defendant argues that the trial court first determined that defendant was unable to form the necessary intent to kill because the situation escalated and was heated, which deprived defendant of his cool reflection. Defendant asserts that the record does not reveal sufficient | Revidence presented by the State to conclude beyond a reasonable doubt that defendant possessed the requisite specific intent to attempt to kill the victim. Defendant argues that if this conviction is reversed for insufficient evidence, the double jeopardy provision of the Louisiana and U.S. Constitutions would apply, prohibiting a retrial of defendant.
The State argues a trial court’s articulation of its thought processes in returning a verdict is irrelevant and a reviewing court is to perform an objective evaluation of the evidence in the light most favorable to the prosecution in accordance with State v. Marshall, 04-3139 (La.11/29/06), 943 So.2d 362, cert. denied, 552 U.S. 905, 128 S.Ct. 239, 169 L.Ed.2d 179 (2007). We agree; the appellate court is not required to consider the thought processes of the particular fact finder. Id. at 367.
The State asserts that the record does reveal sufficient evidence to allow a rational finder of fact to conclude that the defendant acted with specific intent to kill in accordance with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The State asserts that defendant attacked the victim with a concealed knife after distracting the victim’s attention with a rod wielded in defendant’s other hand. The State argues that defendant rushed towards the victim and stabbed him in the abdomen/ribcage area with enough force to go through the victim’s lower intestine, spleen, diaphragm, and into his chest cavity. The State asserts that after fleeing the scene and leaving the victim to die, defendant made a voluntary statement to police that he felt that he had killed the victim. The State further argues that the doctor that treated the victim testified that the victim would have died if the wound had been left untreated. Thus, the State asserts that a rational finder of fact could infer that defendant had specific intent to kill the victim.
|flThe standard of review for determining the sufficiency of evidence is whether, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude the State proved the essential elements of the crime beyond a reasonable doubt. Jackson, supra. Under the Jackson standard, a review of the record for sufficiency of the evidence does not require the court to ask whether it believes that the evidence at trial established guilt beyond a reasonable doubt. State v. Alexander, 12-194 (La.App. 5 Cir. 5/16/13), 119 So.3d 120, 130-31 (citing State v. Jones, 08-20, p. 6 (La.App. 5 Cir. 4/15/08), 985 So.2d 234, 240). Rather, the reviewing court is required to consider the whole record and determine whether any rational trier of fact would have found guilt beyond a reasonable doubt. Id.
Defendant was charged with attempted second degree murder, La. R.S. 14:27 and 14:30.1 and convicted of the lesser charge of attempted manslaughter, La. R.S.14:27 and 14:31. La. R.S. 14:27(A) provides:
Any person who, having a specific intent to commit a crime, does or omits an act *1192 for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
La. R.S. 14:31(A) provides that “manslaughter” is:
A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender’s blood had actually cooled, or that an average person’s blood would have cooled, at the time the offense was committed.
According to La. R.S. 14:30.1, second degree murder is the killing of a human being, when the offender has a specific intent to kill or inflict great bodily harm. La. R.S. 14:10(1) provides that: “[sjpecific criminal intent is that state of linmind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.”
Specific intent need not be proven as a fact, but may be inferred from the circumstances and actions of the accused. State v. Trim, 12-115, p. 6 (La.App. 5 Cir. 10/16/12), 107 So.3d 656, 660, writ denied, 12-2488 (La.4/19/13), 111 So.3d 1030 (citing State v. Girod, 94-853, pp. 5-6 (La.App. 5 Cir. 3/15/95), 653 So.2d 664, 668). Specific intent to kill can be inferred from the intentional use of a deadly weapon such as a knife or a gun. Trim, 12-115 at 6, 107 So.3d at 660 (citing State v. Knight, 09-359, p. 14 (La.App. 5 Cir. 2/9/10), 34 So.3d 307, 317, writ denied, 10-2444 (La.10/21/11), 73 So.3d 376). Specific intent to kill may be inferred from the extent and severity of the victim’s injuries. State v. Riley, 11-673, p. 11 (La.App. 5 Cir. 3/13/12), 90 So.3d 1144, 1150, writ denied, 12-0855 (La.9/28/12), 98 So.2d 828 (citing State v. Stacker, 02-768, (La.App. 5 Cir. 12/30/02), 836 So.2d 601, 606, writ denied, 03-0411 (La.10/10/03), 855 So.2d 327).
Whether a defendant possessed the requisite intent in a criminal case is a question for the trier-of-fact, and a review of the correctness of this determination is guided by the Jackson standard. Trim, 12-115 at 6, 107 So.3d at 660 (citing State v. Gonzalez, 07-449, p. 9 (La.App. 5 Cir. 12/27/07), 975 So.2d 3, 8, writ denied, 08-0228 (La.9/19/08), 992 So.2d 949).
In the present case, Dr. Marr testified that the victim’s wound was eight to ten inches deep, and that the weapon went through his spleen, then his diaphragm, and then into his chest cavity. Dr. Marr testified that it required a great deal of force to cause the injury to puncture all of the muscles and different organs. He also testified that the injury was potentially lethal, and the victim’s probability of death was extremely high but for his medical treatment. The witnesses and evidence showed that defendant stabbed the victim in his rib area. Officers lnGlapion and Sanchez testified that the first words defendant spoke to them was “I think I just killed my brother-in-law.”
In State v. Hebert, 05-1004, p. 10 (La.App. 5 Cir. 4/25/06), 930 So.2d 1039, 1047, this Court found that the State proved the defendant had specific intent to kill the victim and that the defendant committed an overt act in furtherance of that goal. The victim testified that the defendant stabbed him and that a struggle ensued *1193 when the defendant attempted to stab him again. Id. The victim’s doctor testified that as a result of the stab wound, the victim had blood in his chest. Id. He also testified that the injury damaged the victim’s diaphragm, liver, and lung, which required surgery. Id., 05-1004 at 10-11, 930 So.2d at 1047. The doctor testified that it took considerable force for the knife to go through the victim’s rib cage. Id., 05-1004 at 11, 930 So.2d at 1047. The defendant’s girlfriend testified on behalf of the State after entering into a plea deal. Id., 05-1004 at 4, 930 So.2d at 1044. She testified that before the stabbing, the defendant told her that he wanted to rob and kill the victim. Id., 05-1004 at 10, 930 So.2d at 1047. She further testified that the defendant handed her two knives and told her to put them underneath the seat of the car, where the stabbing occurred. Id. This Court found that the evidence supported the defendant’s conviction for attempted second degree murder. Id., 05-1004 at 11, 930 So.2d at 1047.
In State v. Lewis, 97-160, p. 6 (La.App.7/29/97), 698 So.2d 456, 459, writ denied, 97-2381 (La.3/27/98), 716 So.2d 881, this Court found that the intent to kill may be inferred from the extent and severity of the victim’s injuries. The surgeon that treated the victim at the hospital testified that the victim’s most serious injury was the stab wound to her abdomen. Id., 91-160 at 7, 698 So.2d at 460. He testified the stabbing punctured a main blood vessel, the victim lost a lot of blood, and her survival rate was 50 percent. Id. He also testified that the injury | ^would have been caused by the plunging of a knife deep into the victim’s abdomen. Id. The victim also suffered multiple perforations of the large and small intestines, multiple stab wounds to her forearm, and blunt force trauma to her right temple. Lewis, 97-160 at 7, 698 So.2d at 460. After causing the victim’s serious injury, the defendant fled the scene without seeking medical assistance for her. The defendant testified that he stabbed the victim repeatedly after she had stabbed him during an argument. Id., 91-160 at 4, 698 So.2d at 458. This Court found the specific intent might reasonably be implied from intentional use of a deadly weapon to produce injuries involving serious risk of death. Id. (citing State v. Weiland, 562 So.2d 950 (La.App. 5 Cir. 1990)).
In the present case, similar to Hebert, supra, the victim suffered a single stab wound that damaged multiple organs. The doctor who treated the victim at the hospital testified the injury required a great deal of force. Similar to Hebert, in which the defendant provided the knife used in the stabbing, in the present case defendant went upstairs and when he returned downstairs he had the knife used to stab the victim. Similar to Lewis, supra, in the present case, the doctor testified that the victim’s injury was potentially very lethal, and the victim would have died but for receiving medical treatment. Defendant also fled the scene of the crime without attempting to seek medical assistance for the victim.
Unlike Hebert, the State in the present case did not offer any testimony regarding statements made before the stabbing that defendant intended to kill the victim. Nevertheless, the State did offer the testimony of two officers that defendant stated after the stabbing that he thought he had killed his brother-in-law. Unlike Hebert and Lewis, there is no evidence or testimony that defendant stabbed or attempted to stab the victim multiple times. Nevertheless, the evidence and testimony supports that the single stab wound was life-threatening. After the fact, [isdefendant admitted that he knew the injury he caused to the victim was life-threatening and yet *1194 failed to seek medical assistance for the victim. Therefore, we find that specific intent to kill may reasonably be inferred from the extent and severity of the victim’s injuries and from defendant’s use of a deadly weapon to produce those injuries, which involved serious risk of death. We further find that defendant fled immediately after the crime, and that such flight, considered with all the other evidence, was due to defendant’s consciousness of guilt. See State v. Burbank, 07-125 (La.App. 5 Cir. 10/30/07), 971 So.2d 1173, writ denied, 07-2287 (La.4/25/08), 978 So.2d 364. We conclude that defendant had the specific intent required to be convicted of the responsive verdict of attempted manslaughter.
Based on the foregoing, defendant’s assignment of error lacks merit.

ERRORS PATENT DISCUSSION

The record was reviewed for errors patent, according to La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990).
We note that the re-sentence[8] on the multiple bill was imposed “at hard labor” as reflected in the commitment.[9] However, the transcript reflects that the trial court stated that the sentence would be served “in the Department of Corrections.” “[Ojnly individuals actually sentenced to death or confinement at hard labor shall be committed to the Department of Public Safety and Corrections.” La. R.S. 15:824(0(1). This Court has found it unnecessary to remand a matter for re-sentencing when the transcript does not specifically state that the sentence was to be served at hard labor, yet the trial court stated that the sentence would be served in the Department of Corrections. See State v. Hubbard, 12-202 (La.App. 1145 Cir. 10/30/12), 103 So.3d 594; State v. Vance, 06-452 (La.App. 5 Cir. 11/28/06), 947 So.2d 105, writ denied, 07-0152 (La.9/28/07), 964 So.2d 351; State v. Upchurch, 00-1290 (La.App. 5 Cir. 1/30/01), 783 So.2d 398, 403.
Further, it appears that it was mandatory for defendant’s sentence to be served at hard labor, which indicates that the re-sentence is determinate, and the trial court’s failure to state that the re-sentence was to be served at hard labor was harmless error. See State v. Alexander, 08-580, p. 10 (La.App. 5 Cir. 2/25/09), 8 So.3d 732, 738, writ denied, 09-717 (La.12/11/09), 23 So.3d 912; Hubbard, supra.
La. R.S. 14:27(3) provides in general that a person who attempts to commit a crime: “shall be fined or imprisoned or both, in the same manner as for the offense attempted; such fine or imprisonment shall not exceed one-half of the largest fine, or one-half of the longest term of imprisonment prescribed for the offense so attempted, or both.” La. R.S. 14:31(B) provides that “[wjhoever commits manslaughter shall be imprisoned at hard labor for not more than forty years.” (Emphasis added). Therefore, we find that no corrective action is required. Alexander, supra; Hubbard, supra.

DECREE

Accordingly, for the reasons set forth herein, we affirm defendant’s conviction and sentence. Defendant’s application for post-conviction relief, filed in this Court on August 27, 2013 during the pen-dency of this appeal, is denied as prema *1195 ture, as defendant must first exhaust whatever appellate rights he has. La. C.Cr.P. art. 924.1.

AFFIRMED

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. Interim Louisiana Public Hospital was also referred to as University Hospital.

.The bill of information misspelled the victim’s name as "Gravin.” In all other instances, the victim’s name is spelled "Gavin.” Specifically, it appears that the victim cor *1190 rectly spelled his name at the beginning of his trial testimony.

. The record reflects that defendant waived any substantive motions in his Motion for Speedy Trial filed on March 7, 2012. Nevertheless, the hearing on defendant’s motion to suppress statement was held after defendant had filed his Motion for Speedy Trial.

. At the motion hearing, defense counsel stated that defendant waived his right to preliminary examination and instead accepted open discovery. Defendant argued the motion to quash on the ground that defendant was originally charged with aggravated battery in Division B, but the assistant district attorney in that division increased the charges to attempted second degree murder. The record reflects only one bill of information charging defendant with attempted second degree murder.

. Defendant made an oral notice of intent to seek an appeal on July 19, 2012, and filed a written motion for appeal on August 7, 2012, which was granted on August 14, 2012. Defendant was convicted on July 19, 2012, and sentenced, both originally and as a multiple bill offender, on August 6, 2012. After resen-tencing, defendant again noted his oral motion for appeal. Therefore, the motions for appeal were made within 30 days of the judgment or ruling in accordance with La.C.Cr.P. art. 914(B)(1), and the written motion for appeal was also filed within 30 days of sentencing.

. The record does not reflect that the trial court ever stated or found that defendant did not have specific intent to commit attempted second degree murder. The record reflects that the trial court found defendant guilty of the responsive verdict of attempted man *1191 slaughter instead of attempted second degree murder because the crime would be murder but it was committed in a sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection.

. The trial court also failed to impose the original sentence at hard labor.

. Generally, when there is a discrepancy between the minutes and the transcript, the transcript prevails. See State v. Lynch, 441 So.2d 732, 734 (La.1983).